**LYNCHBURG TRAFFIC BUREAU (Corp.), Lynchburg, Virginia, Appellant,**

v.

**SMITH'S TRANSFER CORPORATION OF STAUNTON, VIRGINIA, Appellee.**

No. 8169.

United States Court of Appeals Fourth Circuit.

Argued Oct. 19, 1960.

Decided Jan. 6, 1961.

Wilbert G. Burnette, Lynchburg, Va., for appellant.

Bryce Rea, Jr., Washington, D. C. (Watkins & Rea, Washington, D. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOBELOFF, Chief Judge.

Lynchburg Traffic Bureau is a non-profit corporation created to assist shippers and receivers of freight in and near Lynchburg, Virginia, in local pickup, consolidation, movement and local delivery of shipments. On February 25, 1958, it began an action in the United States District Court for the Western District of Virginia against Smith's Transfer Corporation of Staunton, Virginia, a certificated common carrier by motor vehicle. The complaint charged that the plaintiff had since June 10, 1953, received at Lynchburg, Virginia, from New York, "numerous less-than-truckload shipments of various articles via Smith's Transfer Corporation," on which the defendant carrier had charged unlawful, unjust and unreasonable rates in an aggregate overcharge of $3,675 with full knowledge that the rates collected were unlawful.

The plaintiff relied on various expressions in certain proceedings before the Interstate Commerce Commission, particularly one in 1951,[1] as indicative that the rates charged were unreasonable.

1. Investigation and Suspension Docket No. M–2947, Dry Goods, Piece Goods, Dependent on Value, 53 M.C.C. 157.

The defendant thereupon moved to dismiss the complaint, asserting that the plaintiff failed to allege that the rates charged were not those filed and published pursuant to the statute, but rather that the complaint merely amounted to an allegation that rates properly established and charged pursuant to law were, in fact, unreasonable. The District Court declined to dismiss. Although it agreed that it was without power to fix reasonable rates for motor carriers the court ordered the case held in abeyance until the reasonableness of the rates could be determined by the Interstate Commerce Commission in a proceeding which had been instituted for that purpose. The defendant then brought in this court a petition for mandamus to command the District Judge to dismiss the suit. Mandamus was denied by us on the sole ground that the petition was tantamount to a premature appeal. Smith's Transfer Corporation of Staunton, Va. v. Barksdale, 4 Cir., 1958, 259 F.2d 498.

On May 18, 1959, the Supreme Court of the United States decided T. I. M. E., Incorporated v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952, in which it held that a shipper of goods by a certificated motor carrier may not challenge in a federal district court the reasonableness of a carrier's past charges made in accordance with the applicable tariffs. The Court decided that the Motor Carrier Act, 49 U.S.C.A. § 301 et seq., did not confer on shippers a statutory cause of action for the recovery of past charges at unreasonable rates, and further that the Act did not contemplate that shippers should have a common law right to sue for the recovery of unreasonable past rates. The Supreme Court also there held that the District Court was not empowered to determine what rate was reasonable for past shipments, nor could it refer that issue to the Interstate Commerce Commission to exercise an auxiliary jurisdiction in aid of a jurisdiction the District Court did not possess.

The defendant carrier, relying on the T.I.M.E. decision, then filed a motion for judgment on the pleadings. Later it filed a memorandum insisting again that the freight charges were "properly computed at applicable rates duly filed with the Interstate Commerce Commission." To this the plaintiff replied, maintaining that:

"The mere filing of rates and charges with the Interstate Commerce Commission cannot make those filed rates and charges lawful when, as here, those rates and charges are contrary to the rates and charges the Commission fixed for application on the articles included in the shipments here considered, which latter rates and charges would have been assessed at the time of movement of these shipments had the defendant published in its tariff the rates and charges the Commission fixed as lawful rates and charges."

It is the plaintiff's contention in this court that the carrier failed to publish the rates and charges "fixed" by the Commission, but charged instead rates in excess of those so "fixed." The plaintiff thus seeks to distinguish the present case from T.I.M.E., maintaining that in T.I.M.E. the issue was the reasonableness of rates previously filed and not rejected or suspended by the Commission, whereas, here, it is said that the defendant had failed and refused to publish rates and charges which the Interstate Commerce Commission had "required."

The claimed distinction between this case and T.I.M.E. did not impress the District Court and on May 11, 1960, it passed an order granting the defendant's motion for judgment on the pleadings on the stated ground that the decision of the Supreme Court in T.I.M.E. is controlling.

If, indeed, we could perceive in the earlier proceedings to which our attention has been called, (though they were not made a part of the record,) a plain order or orders of the Commission which had the effect of approving certain rates

applicable to the shipments here in question, and the defendant's charges were in excess of such rates, the plaintiff might well have a case not falling within the T.I.M.E. ruling. We cannot so adjudicate on this record. Our difficulty stems from the fact that we are unable from a reading of the reports of the Commission submitted to us at the hearing of the appeal, to determine precisely how what was there decided bears on the shipments here in question. We find in the reports referred to by the plaintiff a number of criticisms of the rate structure but there is no way to ascertain from the pleadings or any of the supplemental memoranda filed by the parties precisely what charges could validly be made under the prevailing schedules and what charges were actually made. The complaint merely attached a long list of dates of shipments. There is no description of the merchandise shipped, either as to the nature of the commodities, their weights, or otherwise. Such a list of dates with no further amplification is unilluminating.

Freight tariffs are highly technical and complex. Charges may vary according to the weight of the shipment or the nature of the goods shipped. Differences which may appear slight to the uninformed may be crucial in determining whether one rate or another applies. Referring to a shipment of "various articles" is meaningless, where it becomes important to establish whether the charge assailed applies to the particular article. Pins and pianos, matches and machinery, wearing apparel made of wool and that made of cotton, all have their own specific schedules. If the plaintiff meant to allege and was prepared to prove that the articles shipped on the dates mentioned fell under certain schedules then in effect, and that the carrier exacted rates in excess of those permitted by the schedules, he has utterly failed to do so. Nor is it possible to infer, with any degree of confidence, from any of the papers before us that such was the plaintiff's intention. Of course, if the plaintiff is merely seeking to litigate

in the District Court the reasonableness of past rates, then the court is without jurisdiction, as T.I.M.E. decided and as the District Court pointed out. Moreover, if the plaintiff seeks relief from rates which the Commission has merely criticized, but which it has not seen fit to set aside and replace by other rates, T.I.M.E. would seem to indicate that the District Court could still afford him no remedy.

The practice of the Interstate Commerce Commission is not ordinarily to "fix" rates for motor carriers on the Commission's initiative. Schedules are filed by the carriers or their agents and these become effective on the prescribed dates, unless the Commission takes some affirmative action to prevent it. The Commission is empowered to suspend or reject rates filed by a carrier, or it may in an appropriate case order the cancellation of rates already in effect. In any event, no cause of action is stated unless it is shown that rates charged exceed the tariff in effect for the particular commodities in question. There has been no such showing here.

The plaintiff has earnestly stressed various admonitions by the Interstate Commerce Commission to this defendant and others, made from time to time over a period of years, urging them to revise their schedules. Apparently these admonitions have gone unheeded or have been only partially observed, but we have no way of evaluating the significance of the expressions referred to in relation to the present litigation.

While on the record before it the court was correct in ordering dismissal of the proceeding, we will, because of the obscurity of the facts alleged, remand the case to give the plaintiff an opportunity, if so advised, within 30 days to address an application to the discretion of the District Court, for leave to file an amended complaint alleging facts, if they exist, which might entitle it to relief.

Before leave to amend is granted, the District Court should be satisfied by the plaintiff that the amended complaint will

allege and the plaintiff intends to prove that the rates actually charged exceed the applicable *filed* rates; otherwise nothing could be gained by permitting amendment.

Remanded for proceedings not inconsistent with this opinion.