**WEST TENNESSEE MOTOR EXPRESS, INC., Plaintiff-Appellant,**

v.

**DYERSBURG COTTON PRODUCTS, INC., Defendant-Appellee.**

No. 14528.

United States Court of Appeals
Sixth Circuit.

Feb. 1, 1962.

Walter Harwood, Jr., Nashville, Tenn., for appellant.

Glenn M. Elliott, Memphis, Tenn., for appellee, Wrape & Hernly, Memphis, Tenn., and Barret Ashley, Ashley & Ashley, Dyersburg, Tenn., on the brief.

Before MILLER, Chief Judge, MARTIN, Circuit Judge, and MAGRUDER, Senior Circuit Judge.

SHACKELFORD MILLER, Jr., Chief Judge.

The appellant, West Tennessee Motor Express, Inc., filed this action in the District Court to recover unpaid freight charges in the amount of $12,530.73 alleged to be due from the appellee, Dyersburg Cotton Products, Inc., for transportation services performed for the appellee under appellant's lawfully published tariffs.

The applicable tariffs provide that the carrier will furnish and set a truck at the loading site designated by the shipper and that "Freight tendered for loading shall be so situated as to be directly accessible to the truck and immediately adjacent thereto" and must be so placed by the shipper without assistance from the carrier. The tariffs further provide that the carrier may move shipments or portions of shipments from positions beyond the immediately adjacent loading position referred to, but at an additional charge.

The complaint alleged that during a period of more than twenty-seven months next preceding the filing of the complaint outbound interstate shipments of the appellee were not situated so as to be directly accessible to the appellant's truck and immediately adjacent thereto, and that appellant's drivers had been required to go into the plant building to procure said outbound shipments, but that appellant had failed to assess and bill the appellee for the special inside pickup service performed by it as required in its tariffs.

Appellee, before filing an answer to the complaint, filed a motion to refer the matter to the Interstate Commerce Commission for its opinion on the questions of tariff construction presented by the complaint. The motion was subsequently amended so as to pray for the entry of an order staying further proceedings until appellant shall have exhausted its administrative remedy in procuring determination by the Interstate Commerce Commission of the applicability of tariffs referred to and reasonableness of the rates and charges upon which the action was based, as well as construction of the terminology contained in said tariffs with respect to the transportation alleged to have been performed by appellant for the appellee.

In support of its motion appellee contends that if the applicable tariffs are to be considered, construed and applied by the court, it will be necessary to analyze and construe provisions to be found in nine tariffs and some thirty-two supplements to such tariffs, and that since there has been no separation in the complaint of intrastate shipments from interstate movements for the period of twenty-seven months during which the alleged undercharges were made, a detailed check and investigation will be required in order to separate the intrastate movements from those handled in interstate commerce, for which the Commission is better equipped than is the Court.

Following a hearing, the District Judge sustained the motion and entered an order staying the proceedings as prayed, from which this appeal was taken.

The District Judge wrote no opinion and cited no authority in support of his ruling, and we do not have the benefit of his reasons for the ruling.

In United States v. Western Pacific Railroad Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126, the Supreme Court held in a case involving an interstate carrier by rail that, under the circumstances there presented, the question of tariff construction, as well as that of the reasonableness of the tariff as applied, was within the exclusive primary jurisdiction of the Interstate Commerce Commission. In defining "primary jurisdiction" the Court said that where a claim is originally cognizable in the courts but enforcement of it requires the resolution of issues, which, under a regulatory scheme, have been placed within the special competence of an administrative body, the judicial process should be suspended pending referral of such issues to the administrative body for its views; that no fixed formula exists for applying the doctrine of primary jurisdiction but in every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation; that in the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions; that more recently the expert and specialized knowledge of the agencies involved has been particularly stressed. The Court said that the doctrine of primary jurisdiction is a doctrine allocating the lawmaking power over certain aspects of commercial relations; it transfers from court to agency the power to determine some of the incidents of such relations; that with respect to interstate carrier tariffs the courts must not only refrain from making them, but, under certain circumstances, must decline to construe them as well. In that case the Court held that a determination of the meaning of the tariff in question involved factors the adequate appreciation of which presupposed an acquaintance with

many intricate facts of transportation, and sustained the Government's contention that the court proceedings should be suspended and the matter referred to the Interstate Commerce Commission. The ruling was followed in United States v. Chesapeake & Ohio Railway Co., 242 F.2d 732, C.A.4th. See, however, Bernstein Bros. Pipe & Machinery Co. v. Denver & R. G. W. R. Co., 193 F.2d 441, 444–445, C.A.10th, decided prior to United States v. Western Pacific Railroad Co., supra.

Insofar as the reasonableness of the tariff in the present case is concerned, the ruling in United States v. Western Pacific Railroad Co., supra, is not applicable. That case involved an interstate carrier by rail. The Supreme Court has recently held in T. I. M. E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952, that in post-shipment litigation involving charges by an interstate motor carrier, as distinguished from an interstate carrier by rail or water, a shipper is not entitled to an Interstate Commerce Commission determination upon the question of the reasonableness of the carrier's charges made in accordance with the tariff governing the shipment. This ruling has been followed in Lynchburg Traffic Bureau v. Smith's Transfer Corp., 285 F.2d 743, C.A.4th, and in Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., 293 F.2d 205, C.A.2d.

However, we are of the opinion that insofar as the applicability and construction of the tariffs are concerned the rationale of United States v. Western Pacific Railroad Co., supra, is applicable to the present case and that the doctrine of primary jurisdiction as there defined and explained supports the ruling of the District Judge in entering a stay order in the case, although not as broad an order as was entered. The stay order as entered stays further proceedings in the case until appellant shall have exhausted its administrative remedy in procuring determination by the Interstate Commerce Commission of applicability of the tariffs referred to in the pleadings as well as construction and definition of the terminology in said tariffs "and determination of lawfulness of the rates and charges set forth therein." Under the ruling in T. I. M. E., Inc. v. United States, supra, the issue of the lawfulness of the rates and charges should not be referred to the Interstate Commerce Commission for its determination in post-shipment litgation of this kind. That portion of the stay order so providing should be deleted from the order.

The stay order as so modified is affirmed.