# NORTHERN PACIFIC RAILWAY COMPANY *v.* SOLUM.

# NORTHERN PACIFIC RAILWAY COMPANY *v.* MONARCH ELEVATOR COMPANY.

# NORTHERN PACIFIC RAILWAY· COMPANY *v.* DULUTH ELEVATOR COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

Nos. 205, 206, 526. Argued March 19, 1918.—Decided June 10, 1918.

The duty of a carrier to ship by the cheapest route in the absence of shipping instructions is not absolute; it is a duty to deal fairly with the shipper, with due regard also for the carrier's own interest and its obligation to the public.

Resort to the more expensive of two of the carrier's routes may be justified by a reasonable general practice of the carrier.

The Northern Pacific, having two routes between Duluth and other Minnesota points farther west, one intrastate, with a heavy upgrade westward, the other interstate, of lighter grades, used, in the absence of other shipping directions, the former for Minnesota traffic bound to Duluth and the latter for like traffic in the other direction. The charges under the interstate tariff were more than those allowed between the same points by Minnesota law. *Held*, that the reasonableness of this practice of routing was an administrative question within the jurisdiction of the Interstate Commerce Commission, whose decision the state courts had no jurisdiction to anticipate.

133 Minnesota, 93; *id.* 461, reversed.

Writ of error to review 136 Minnesota, 468, dismissed.

THE cases are stated in the opinion.

*Mr. Charles Donnelly*, with whom *Mr. Charles W. Bunn* was on the brief, for plaintiff in error.

*Mr. Henry C. Flannery*, Assistant Attorney General of the State of Minnesota, with whom *Mr. Lyndon A. Smith*, Attorney General of the State of Minnesota, was on the brief, for defendant in error in No. 205.

*Mr. Ernest E. Watson*, for defendants in error in Nos. 206 and 526, submitted.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

These three cases were heard together. In each of them the plaintiff below sought to recover from the Northern Pacific Railway Company, in a state district court of Minnesota, an amount equal to that by which the freight collected for coal carried on an interstate route from Duluth to some other city in the State, exceeded the rate prescribed by the Minnesota law for carriage between those points on another route, wholly within the State. In each case judgment was entered in the trial court for the plaintiff for such amount; and the judgments were affirmed by the Supreme Court of Minnesota. Each case comes here on writ of error.

Carlton is situated on the Northern Pacific Railway, west of Duluth. Between these Minnesota cities that company operates two lines of railroad, each mainly single track. The northerly line, about 20.9 miles in length, lies wholly within Minnesota; the southerly line, 27.5 miles in length, extends for 11.7 miles through Wisconsin. The southerly is the original Northern Pacific line which was built in 1885. It has relatively light grades. The northerly line was built by the St. Paul and Duluth Railroad Company and came under the management of the Northern Pacific in 1900. It has a heavy upgrade from Duluth to Carlton. Since 1900 both lines have been operated continuously by the Northern

Pacific. Because of these grades, the northerly route has been used almost exclusively for such Duluth shipments as are inbound and the southerly route has been used for such as are outbound. Until June, 1907, the rates were the same over the two routes. They were duly filed with the Minnesota Railroad and Warehouse Commission and with the Interstate Commerce Commission.

In 1907 the legislature of Minnesota fixed for intrastate carriage of coal, maximum rates which were lower than the published rates theretofore charged. The rates so fixed were to take effect June 1, 1907; but before that date their enforcement was enjoined by the proceedings which were reviewed in *The Minnesota Rate Cases*, 230 U. S. 352. This injunction remained in effect until July, 1913, when it was dissolved pursuant to that decision. Until then the Northern Pacific continued to charge the published rates (and therefore the same rates) on all shipments of coal from Duluth to Minnesota points, whether moving via the interstate route or the intrastate route. After dissolution of the injunction, the company refunded on the few shipments which had moved over the intrastate route, the amount by which the charges actually collected exceeded the charges which would have been collected had the rates fixed by the legislature been observed. It refused, however, to make refunds on shipments made over the interstate route, on the ground that the state statute did not affect them.

Among such shipments were those involved in these cases, from Duluth by the interstate route to three Minnesota points, Hitterdal, Battle Lake, and Hawley, cities on the Northern Pacific lying west of Carlton. The shipment in each case was delivered to the Railway without any instruction as to how it should be routed; but the plaintiffs contended that, in the absence of instructions, it was the duty of the carrier to select that

route which was for the interest of the shipper, namely the intrastate route; because it would prove to be the cheaper, if the rates prescribed by the State were upheld. The several shippers claimed that they were entitled to the same refunds which would have been made if the coal had been carried on the intrastate route; and the suits were brought to recover these amounts.

The Railway answered in the first two cases, that, at the time of the shipments, the rates published were (because of the injunction in effect) identical on the two routes; that "in the ordinary and proper and economical operation of its property, it was necessary to move, and this defendant in general did and does now, move all out-bound shipments from Duluth via the interstate line and all in-bound shipments into Duluth via the intrastate line, and that to have carried the shipments referred to in the complaint to their destination . . . via said intrastate line instead of via the interstate line, over which they were actually carried, would have entailed great additional expense upon this defendant"; and that these rates were just and reasonable for the service performed and were collected pursuant to the tariffs published and filed with the Interstate Commerce Commission. In the third case the answer alleged in addition, that, on December 24, 1915, and prior to the commencement of that action, the Interstate Commerce Commission had, in *Holmes & Hallowell Co.* v. *Great Northern Ry. Co.*, 37 I. C. C. 627, decided that the practice of defendant in routing its westbound shipments from Duluth over its interstate line was a proper and reasonable practice and had denied the application for reparation on shipments of coal made over that route.

The judgments entered were upon demurrers to the answers. That in number 205 was entered May 28, 1916; that in number 206 on May 23, 1916; that in number 526 on May 2, 1917. (133 Minnesota, 93; *Id.* 461; 136 *Id.* 468.)

In each case it is assigned as error that the state court held that the cause of action therein is not affected by the federal statute regulating interstate commerce; and also that the state court assumed jurisdiction in advance of a determination by the Interstate Commerce Commission as to whether the practice of the Northern Pacific Railway, in sending via its interstate route all shipments of the character involved in these cases, was reasonable. In the third case the additional error is assigned that the court held that the intrastate rate should be applied, although the Interstate Commerce Commission had found that the practice of routing outbound shipments from Duluth via the interstate route was proper and reasonable. The objection that the court lacked jurisdiction to entertain the proceeding was not made in the answers in the trial court; but it was insisted upon before the Supreme Court of Minnesota; was considered and overruled by that court (133 Minnesota, 93, 97); and is available here. In numbers 205 and 206 judgment was entered before the Act of September 6, 1916. A federal question is involved; and the cases are properly here under § 237 of the Judicial Code. In number 526 the judgment was entered after the Act of September 6, 1916, c. 448, 39 Stat. 726, took effect. In that case there was not drawn in question the validity of a statute or treaty nor the validity of any authority exercised under the State. *Philadelphia & Reading Coal & Iron Co.* v. *Gilbert,* 245 U. S. 162; *Ireland* v. *Woods,* 246 U. S. 323; *Stadelman* v. *Miner,* 246 U. S. 544. The writ of error in number 526 must therefore be dismissed; although the defendant in error has not objected to the jurisdiction of this court.

We proceed to consider numbers 205 and 206. In those cases the Supreme Court of Minnesota declared that the carrier's duty was governed by the common law and it stated the applicable principle as follows (p. 96):

"Where a railroad company operates two lines of railroad between the same points, and the freight rate over one line is less than such rate over the other line, if other conditions are reasonably equal, it is the duty of the company to transport shipments between those points over the line which will give the shipper the benefit of the cheaper rate. To justify transporting such shipments over the other line and thereby compel the shipper to pay the higher rate, the company must show that such line was chosen by the shipper or that the circumstances or exigencies were such that a proper regard for the interests of the shipper precluded the use of the cheaper line."

In the absence of shipping instructions it is ordinarily the duty of the carrier to ship by the cheaper route. But the duty is not an absolute one. The obligation of the carrier is to deal justly with the shipper, not to consider only his interests and to disregard wholly its own and those of the general public. If, all things considered, it would be unreasonable to ship by the cheaper route, the carrier is not compelled to do so. The duty is upon the carrier to select the cheaper route only "if other conditions are reasonably equal." Resort to the more expensive route may be justified. And the justification may rest either upon the peculiar circumstances of a particular case or upon a general practice. In the cases before us the justification is rested upon a general practice. The answers allege that, because of the grades of the two lines, all outbound shipments were and are in general moved over the southerly route on account of the very great expense which another arrangement would entail. It may well be, under such circumstances, that carriage over the interstate route would be justified, even if it appeared that it was feasible to haul freight out of Duluth over the intrastate line. Whether the practice of the carrier of shipping over the interstate route was reasonable, when a lower

intrastate route was open to it, presents an adminstrative question, one of perhaps considerable complexity.

The Railway contends that, since the administrative question upon which its liability depends involves the reasonableness of a practice in interstate commerce and the traffic actually moved in interstate commerce, the court had no jurisdiction to adjudicate the controversy until that administrative question had been determined by the Interstate Commerce Commission. The shipper, on the other hand, urges that the rule which requires such preliminary determination of administrative questions by the Commission applies only to those cases where the question involved is whether a particular rate is unreasonable or whether a particular practice is discriminatory. But the rule is not so limited. It applies, likewise, to any practice of the carrier which gives rise to the application of a rate. *Texas & Pacific Ry. Co. v. American Tie & Timber Co.*, 234 U. S. 138, 147; *Pennsylvania R. R. Co. v. Puritan Coal Co.*, 237 U. S. 121, 131; *Pennsylvania R. R. Co. v. Clark Brothers Coal Mining Co.*, 238 U. S. 456, 469. The Interstate Commerce Commission has frequently entertained proceedings for refunds for misrouting under such circumstances.[1] Indeed, long before these suits were filed, proceedings had been begun before the Interstate Commerce Commission against this and other railroad companies to secure the refunds of amounts paid for shipment over the interstate routes between Minnesota points in excess of that which would have been payable, if shipment had been made over the intrastate routes. *Holmes & Hallowell Co. v. Great Northern Ry. Co.*, 37 I. C. C. 627,

---

[1] *Willman & Co. v. St. Louis, Iron Mountain & Southern Ry. Co.*, 22 I. C. C. 405; *Lathrop Lumber Co. v. Alabama Great Southern R. R. Co.*, 27 I. C. C. 250; *Texarkana Pipe Works v. Beaumont, Sour Lake & Western Ry. Co.*, 38 I. C. C. 341; *McCaull-Dinsmore Co. v. Great Northern Ry. Co.*, 41 I. C. C. 178; *Cardwell v. Chicago, Rock Island & Pacific Ry. Co.*, 42 I. C. C. 730.

630, 645, 649. And before the judgments were entered by the Supreme Court of Minnesota in these cases, the Interstate Commerce Commission had determined that, under the circumstances, "the carrier was not required. by law to change its methods of operation and abandon the use of its more favorable interstate line"; and had refused to grant refunds in respect to the shipment of other commodities, under circumstances precisely like those presented here.

The fact that the administrative question presented involves an intrastate as well as interstate route does not prevent the application of the rule, that the courts may not be resorted to until the administrative question has been determined by the Commission. It is sufficient that one of the routes is interstate. Compare *Minnesota Rate Cases,* 230 U. S. 352, 419–420; *Houston, East & West Texas Ry. Co.* v. *United States,* 234 U. S. 342.

*In numbers 205 and 206 judgments reversed.*
*In number 526 writ of error dismissed.*