### BORST et al. v. CHICAGO & N. W. RY. CO.
### No. 2914.

District Court, D. Minnesota, Fourth Division.
Feb. 3, 1933.

V. J. Hermel, of Minneapolis, Minn., for plaintiffs.

Wm. T. Faricy and Geo. F. Dames, both of St. Paul, Minn., and P. F. Gault, of Chicago, Ill., for defendant.

NORDBYE, District Judge.

The court having heard the testimony adduced at said trial, and upon all the files and records herein, makes the following findings of fact:

I. That plaintiffs, William R. Borst and C. C. Whitcher, are, and were at all times herein mentioned, copartners doing business as Pierre Furniture Company, at Pierre, S. D.

II. That defendant, Chicago & Northwestern Railway Company, is, and at all times herein mentioned was, a corporation and common carrier by railroad subject to the act of Congress entitled "An-act to regulate commerce," approved February 4, 1887, and amendments thereto (49 USCA § 1 et seq.).

III. That on October 17, 1928, a car loaded with mixed new furniture was delivered to the Chicago, St. Paul, Minneapolis & Omaha Railway Company, hereinafter referred to as the Omaha, at Minneapolis, for transportation to plaintiffs at Pierre, S. D. The car was delivered by the said Omaha to the defendant, Chicago & Northwestern Railway Company, at Mankato, Minn., on October 19, 1928, from which point it was transported through Sanborn, Minn., Tracy, Minn., and Iroquois, S. D., to Pierre, S. D., where it arrived on October 21, 1928, and was delivered to plaintiff company as consignee. This shipment was tendered unrouted, except that it specified "Omaha routing."

IV. That on October 15, 1928, a car loaded with mixed furniture was delivered to the Chicago & Northwestern Railway Company at Chicago, Ill., for transportation to the plaintiffs at Pierre, S. D., which shipment was moved by the defendant over its line through Clinton, Boone, Maple River, Sioux City, Wren, and Hawarden, Iowa, and Iroquois, S. D., to Pierre, S. D., arriving at Pierre October 19, 1928, when delivery was made to plaintiff company as consignee. This shipment was tendered unrouted.

V. That on April 28, 1928, a car loaded with mixed furniture was delivered to the Chicago & Northwestern Railway Company at Chicago for transportation to Pierre, S. D., which shipment was moved by that carrier over its line through Clinton, Boone, Maple River, Sioux City, Wren, and Hawarden, Iowa, and Iroquois, S. D., to Pierre, S. D., on May 1, 1928, when delivery was made to the plaintiff company as consignee. This shipment from Chicago was tendered unrouted.

VI. That freight charges were collected on the two carloads from Chicago on the basis of a third-class rate of $1.215 (rates are stated in amounts per 100 pounds), minimum 12,000 pounds, and on the shipment from Minneapolis on the joint third-class rate of $1.11, minimum 12,000 pounds.

VII. Thereafter a complaint was filed with the Interstate Commerce Commission attacking the rates charged on the three shipments as inapplicable, unreasonable, and in violation of the aggregate of intermediates provision of section 4 of the Interstate Commerce Act (49 USCA § 4). That, in addition, the said complaint contained the following paragraph: "That by reason of the facts stated in the foregoing paragraphs, complainant has been subjected to. payment of rates or charges for transportation which were when exacted, and still are, contrary to the provisions of defendant's published tariffs applicable to said shipments, and in violation of the Act to Regulate Commerce, and are otherwise illegal and unlawful."

The complaint sought reparation to the basis of contemporaneous combination rates of $1.12 from Chicago, and 95 cents from Minneapolis, which were published in connection with routes through Sioux Falls, S. D., composed of commodity rates of 51 cents from Chicago, and 34 cents from Minneapolis, minimum 20,000 pounds, to Sioux Falls, and the third-class rate of 61 cents, minimum 12,000 pounds, beyond.

VIII. A hearing was subsequently had on said complaint in due course before one of the Commission's examiners, at which oral and documentary evidence was introduced by the complainants and this defendant, a certified copy of which evidence, including exhibits, was introduced in evidence herein as Defendant's Exhibit 1, and on July 29, 1931, the Interstate Commerce Commission made its order (Pierre Furniture Co. v. Chicago & N. W. R. Co., 177 I. C. C. 514); said order being marked "Plaintiff's Exhibit A," and introduced in evidence herein. Defendant's Exhibit 1 and Plaintiff's Exhibit A are made a part of these findings with the same force and effect as if the same were set forth herein in full.

IX. The Commission found that the rates charged were applicable over the routes the shipments moved, that there was no violation of the fourth section of the act, and, because of its finding with respect to misrouting, the Commission determined it unnecessary to give further consideration to the allegation of unreasonableness.

X. The Commission found that the shipments had been misrouted, and awarded reparation in favor of complainant and against the defendant in the sum of $51.04 and interest, being the difference between the charges based on the applicable rates over the routes of movement, and the charges that would have accrued had the shipments moved over the route through Sioux Falls.

XI. The defendant transported these shipments according to its operating prac-

tice over the routes commonly used in the regular course of business. The shipment from Chicago to Pierre of April 28, 1928, moved a distance of 823 miles. If this car had moved through Sioux Falls, it would have been necessary for this defendant to turn the car over to the Omaha at Sioux City, Iowa, which carrier would have had to transport it away from the direction of movement and to the northeast, to Worthington, Minn., where the car would necessarily have been further handled, and then transported westward, through Sioux Falls, S. D., to Salem, S. D., where it would have been delivered back to this defendant carrier. From Wren, Iowa, the point of divergence of the routes of the defendant and the Omaha, the distance to Worthington is 78 miles, and the distance from Worthington through Sioux Falls, S. D., to Salem is 102 miles, as compared with the distance of 106 miles from Wren to Salem over the line of the defendant. The additional mileage required by routing through Sioux Falls would be 74 miles. Similar additional handling would have been necessary in the case of the Chicago shipment of October 15, 1928, which moved over the same route from Chicago to Pierre, with the exception that it left defendant's main line of the Iowa division at Missouri Valley instead of Maple River.

The shipment of October 17, 1928, from Minneapolis moved directly west from Mankato through Sanborn, Minn., and Iroquois, S. D., to Pierre, a distance of 342 miles from Mankato, and 427 miles from Minneapolis. In order to transport this car from Minneapolis to Pierre by way of Sioux Falls, defendant would have had to move the car 62 miles from Mankato to Sanborn, where it would necessarily have been switched out of the train and moved away from the general direction of movement 26 miles in a southeasterly direction to Butterfield, Minn., at which point it would necessarily have been turned over to the Omaha for a movement of 49 miles to Worthington, and 102 miles from Worthington through Sioux Falls to Salem, at which point the car would necessarily have been delivered back to defendant for a movement of 50 miles to Iroquois, S. D., at which point the car would be back again on the route from Mankato through Sanborn and Iroquois to Pierre. The distance from Sanborn to Iroquois on defendant's route is 143 miles, while on the route through Sioux Falls in connection with the Omaha, the distance between the same points is 227 miles, resulting in an additional mileage of 84 miles if the shipment had been routed through Sioux Falls.

XII. The routes from Minneapolis and Chicago, respectively, through Sioux Falls to Pierre, described above, were not, and are not used for the transportation of traffic from Minneapolis and Chicago to Pierre. In addition to being longer than the routes over which the shipments moved, they would require additional switching and handling, interchange with the Omaha, and additional clerical work resulting from additional switching and handling, and also from the interchange between the defendant and the Omaha; this additional clerical work being required not only at place where additional handling of the cars was performed, but also at the general offices of the defendant at Chicago, Ill., and of the Omaha at St. Paul, Minn. If the cars had moved over the Sioux Falls route, they would have been longer in transit, which would have caused defendant additional per diem expense on foreign equipment used, and additional wear and tear on its own equipment. It further appears from the testimony that the additional switching, besides producing more wear and tear on equipment, would have tended to increase the claim hazard, in that the movement of furniture is often productive of claims. The movement through Sioux Falls of these shipments would have been more expensive and burdensome to the defendant, and would not have been consonant with efficient and economical operation.

XIII. That, if said shipment had been routed through Sioux Falls, the rate moving from Chicago to Pierre was $1.12 per 100 pounds, and the actual rate charged on said shipments in routing the same over the routes commonly used in the regular course of business as hereinbefore described, was $1.215 per hundred pounds. That the rate on said shipment of furniture moving from Minneapolis, Minn., by Sioux Falls, S. D., to Pierre, S. D., was 95 cents per hundred pounds, and the actual rate charged on said shipment by the defendant over the route commonly used in the regular course of business, as hereinbefore described, was $1.11 per hundred pounds. That the two shipments of furniture from Chicago, Ill., to Pierre, S. D., shipped April 28, and October 15, 1928, weighed 19,440 pounds each, and the shipment of furniture from Minneapolis, Minn., to Pierre, S. D., shipped on October 17, 1928, weighed 17,560 pounds.

XIV. That the act of the defendant in moving these shipments over the usual and

142

customary routes, as hereinbefore described, was not unreasonable.

The court makes the following conclusions of law:

(1) That plaintiff take nothing by this action and the same be dismissed, and defendant have and recover its costs and disbursements herein.

(2) Let judgment be entered accordingly.

■ The Interstate Commerce Commission assumed jurisdiction to determine the question of misrouting on the complaint filed by the shipper. The proceedings before the Commission were informal. It establishes its own rules of practice and makes its own rules and regulations as to procedure. It has for some time exercised jurisdiction in claims for refund on account of misrouting under the general allegation of unreasonableness. Bradsher v. Southern R. Co., 42 I. C. C. 327; Gwinn Bros. & Co. v. Chesapeake & O. R. Co., 56 I. C. C. 302. The question of unreasonableness of the rates charged was not strictly before the Commission. The Commission recognized this by determining that it was not necessary to pass upon that allegation as such, in view of its finding with respect to misrouting. There may be some question as to the propriety of the Commission in extending the inquiry to the claim of refund for misrouting under a strict interpretation of the allegations used by the shipper in the complaint. The effect, if any, that was given to the general allegation in the complaint, which is set forth in the findings herein, does not appear from the Commission's order. However, in view of the long-established practice that has been followed by the Commission, this court is reluctant to find that it exceeded its jurisdiction. Furthermore, considerable liberality should be indulged in by the court in giving the Commission reasonable latitude to determine the sufficiency and scope of the pleadings before it. In the case of Arcadia Mills et al. v. Carolina, C. & O. Ry. et al. (D. C.) 293 F. 639, 642, it is stated: "Moreover, the Commission is not restricted, as are the courts, by the limitations of procedural law, and the simplest of pleadings is sufficient to invoke its action. It is empowered to 'make or amend such general rules or orders as may be requisite for the order and regulation of proceedings before it,' and to 'conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice.'"

The carrier was afforded full opportunity to present its testimony to the Commission relating to the alleged claim for misrouting, and no substantial prejudice has resulted if the Commission followed its general practice in permitting the shipper to present its claim for misrouting under the general allegation of unreasonableness.

Admittedly, the administrative question was passed upon by the Commission. Assuming that it is necessary for the Commission to first determine the right to a refund for misrouting, that prerequisite has been complied with. In Northern Pacific Ry. Co. v. Solum, 247 U. S. 477, 38 S. Ct. 550, 62 L. Ed. 1221, the court discusses the necessity of the Commission to determine preliminarily such administrative question. The court stated on page 483 of 247 U. S., 38 S. Ct. 550, 553: "The railway contends that, since the administrative question upon which its liability depends involves the reasonableness of a practice in interstate commerce and the traffic actually moved in interstate commerce, the court had no jurisdiction to adjudicate the controversy until that administrative question had been determined by the Interstate Commerce Commission. The shipper, on the other hand, urges that the rule which requires such preliminary determination of administrative questions by the Commission applies only to those cases where the question involved is whether a particular rate is unreasonable or whether a particular practice is discriminatory. But the rule is not so limited. It applies, likewise, to any practice of the carrier which gives rise to the application of a rate. Texas & Pacific Ry. Co. v. American Tie & Timber Co., 234 U. S. 138, 147, 34 S. Ct. 885, 58 L. Ed. 1255; Pennsylvania R. R. Co. v. Puritan Coal Co., 237 U. S. 121, 131, 35 S. Ct. 484, 59 L. Ed. 867; Pennsylvania R. R. Co. v. Clark Brothers Coal Mining Co., 238 U. S. 456, 469, 35 S. Ct. 896, 59 L. Ed. 1406. The Interstate Commerce Commission has frequently entertained proceedings for refunds for misrouting under such circumstances."

■ The findings of the Commission are, however, merely prima facie in this court. They are not conclusive. At best, its determination of the alleged misrouting is a rebuttable presumption. This action is not brought on the award made by the Commission, but is brought to recover damages for the alleged misrouting.

■ The carrier is generally required to select the cheaper route for shipments in absence of shipping instructions, but this prin-

ciple is not absolute; it is subject to certain well-recognized qualifications. The Solum Case, supra, discusses this subject on page 482 of 247 U. S., 38 S. Ct. 550, 552: "In the absence of shipping instructions it is ordinarily the duty of the carrier to ship by the cheaper route. But the duty is not an absolute one. The obligation of the carrier is to deal justly with the shipper, not to consider only his interests and to disregard wholly its own and those of the general public. If, all things considered, it would be unreasonable to ship by the cheaper route, the carrier is not compelled to do so. The duty is upon the carrier to select the cheaper route only 'if other conditions are reasonably equal.' Resort to the more expensive route may be justified. And the justification may rest either upon the peculiar circumstances of a particular case or upon a general practice."

Assuming that the Omaha and the defendant are to be considered as one line for rate purposes, nevertheless the testimony introduced by the defendant requires a finding that, in handling these shipments, the Sioux Falls route would not be consonant with efficient and economical operation. This route is more devious and circuitous, and the extra switching, handling, and mileage would impose an unreasonable burden upon the carrier. It appears uncontradicted that the shipments were routed according to defendant's usual and customary operative practice. The route chosen by the carrier was the direct and reasonable selection to make for shipments of this character. If the court is to consider the necessity of the carrier to exercise efficient and economical management, then surely the Sioux Falls route, under all the circumstances, would be contrary to efficient and economical railroad practice. The facts of this particular case amply justify the carrier in selecting the route over which these goods were shipped.