**HEWITT–ROBINS INCORPORATED, Plaintiff-Appellant,**

v.

**EASTERN FREIGHT–WAYS, INC., Defendant-Appellee.**

**No. 268, Docket 26685.**

United States Court of Appeals Second Circuit.

Argued Feb. 23, 1961.

Decided July 25, 1961.

Harry Teichner, Brooklyn, N. Y., for plaintiff-appellant.

Goldman & Drazen, New York City (Milton D. Goldman and Wilfred R. Caron, New York City, on the brief), for defendant-appellee.

Before HINCKS and MOORE, Circuit Judges, and BRENNAN, District Judge.*

BRENNAN, District Judge.

The question involved in this litigation requires the application of the provisions of the Interstate Commerce Act (49 U.S. C.A. §§ 301–327), sometimes known as the Motor Carrier Act, to the facts disclosed in the complaint. The Court below held the complaint to be insufficient under Rules 12(b), 12(c) and 56 F.R.Civ. P., 28 U.S.C.A., to present a justiciable issue. A brief statement of facts is set out below.

During the period from January 1953 to February 1955, the appellant delivered to the appellee at Buffalo and New York City numerous unrouted shipments of cartons containing foam rubber pads for transportation between the two above cities. The service was performed by the appellee over an interstate route. The freight charges, in accordance with the filed tariff for such route, were paid by appellant who seeks to recover some $10,-000 which represents the excess of said charges over those applicable to an alternate intrastate route.

The appellee, hereinafter referred to as "Eastern," is a certified common carrier by motor vehicle, possessing operating rights between Buffalo and New York City over both interstate and intrastate routes. The applicable rates for the interstate movement were somewhat higher than the rates for the intrastate movement as fixed in the tariffs filed with the Interstate Commerce Commission and the Public Service Commission of the State of New York.

The complaint alleges specifically that the action "arises under Part II of the Interstate Commerce Act, U. S. Code, Title 49, Sections 301 to 327." It is further alleged therein that the " * * * rates charged * * * and the practice of the defendant in misrouting the shipments * * * were unjust and unreasonable in violation of Section 216, Part II, of the Interstate Commerce Act. (U. S.Code, Title 49, Section 316)." Other allegations are found in the complaint asserting the unreasonableness of the rates charged, all of which are put in issue by the answer. The appellant recognizes the jurisdiction of the Interstate Commerce Commission in the matters referred to in the above allegations. The complaint requests a stay of the deter-

* Sitting by designation.

mination of the issues involved until the Interstate Commerce Commission could determine "the reasonable and just rates for the transportation of the aforesaid shipments" in a proceeding to be instituted by appellant upon the commencement of the action. It may be stated that such a proceeding was taken and an administrative determination was made holding that Eastern's routing practice, as indicated above, was unreasonable. A cease and desist order to operate prospectively was entered. Such determination is challenged by Eastern in an action to review same. The action is pending in the United States District Court for the District of New Jersey.

Subsequent to the commencement of this action, the Supreme Court handed down the decision reported as T. I. M. E. Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952. The lower court relied upon that decision in holding that the complaint, insofar as it is based upon the statute, does not state a claim upon which relief may be granted. The appellant's argument that this action may be distinguished from the holding in the T.I.M.E. case, because the later decision involved rates which were intrinsically unreasonable while here the rates are unreasonable by reason of misrouting, is not persuasive. Under Part 1 of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., "Whether the practice of the carrier of shipping over the interstate

route was reasonable, when a lower intrastate route was open to it, presents an administrative question, * * *" Northern Pacific Ry. Co. v. Solum, 247 U.S. 477, 482–483, 38 S.Ct. 550, 552, 62 L.Ed. 1221.[1] The same practice when arising under the Motor Carrier Act § 201 et seq., Part II of Interstate Commerce Act, 49 U.S.C.A. § 301 et seq.,[2] must necessarily be an administrative question. For there is no significant difference of language between the applicable sections of Part 1 of the Interstate Commerce Act and of the Motor Carrier Act. It follows that the rationale of the T.I.M.E. case, 359 U.S. at pages 472, et seq., 79 S.Ct. at page 909 is directly applicable here: if, as T.I.M.E. holds, under the saving clause of § 216(j) of the Motor Carrier Act, 49 U.S.C.A. § 316(j), no common law remedy is saved to a shipper aggrieved by an unreasonable rate, which was an administrative question, no such remedy is saved to a shipper aggrieved by the application of an unreasonable route, which was also an administrative question as held in Northern Pacific Ry. Co. v. Solum, supra.

Affirmed.

LEONARD P. MOORE, Circuit Judge (dissenting).

The merits of the only question now before the court to me seem so clear that it is difficult to conceive of any ground for disagreement. The question is:

[1] Part 1 of the Interstate Commerce Act, 49 U.S.C.A. § 1(5), with respect to carriers by rail provides that "all charges * * * shall be just and reasonable, and every unjust and unreasonable charge * * * is prohibited and declared to be unlawful." 49 U.S.C.A. § 1(6) provides that "every unjust and unreasonable * * * practice is prohibited and declared to be unlawful." 49 U.S.C.A. § 15(1) provides that whenever " * * * the Commission shall be of opinion that any individual or joint * * * practice whatsoever * * * is or will be unjust or unreasonable * * * the Commission is authorized and empowered to determine * * * what individual * * * practice is or will be just, fair, and reasonable."

[2] Similarly, the Motor Carrier Act, § 216 (b) and (d), 49 U.S.C.A. § 316(b) and (d), provides that it "shall be the duty of every common carrier of property by motor vehicle * * * to establish * * * just and reasonable rates * * * and practices * * *" and that all such charges "shall be just and reasonable and every unjust and unreasonable charge * * * is prohibited and declared to be unlawful." And § 216 (e) of the Motor Carrier Act, 49 U.S. C.A. § 316(e), provides that whenever "the Commission shall be of the opinion that any individual * * * rate * * * or practice * * * is or will be unjust or unreasonable * * * it shall determine * * * the lawful rate * * * or the lawful * * * practice."

should plaintiff (appellant) be deprived of an opportunity to place its case before a trial court upon all the facts or, stated in different form, should the doors of the court house be permanently closed to it after a perusal of the pleadings. The doors have been closed by the district court; the majority here now securely bolts them. The only real issue which the complaint submits for determination is the misrouting of plaintiff's shipments. The majority, as did the District Court, bases its decision upon a recent opinion by the Supreme Court in T. I. M. E. Inc. v. United States, 1959, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 wherein that court in a five-to-four decision held that a shipper of goods by motor carrier in post-shipment litigation cannot challenge the reasonableness of the carrier's charges which had been made in accordance with filed tariffs governing the shipment.

Unlike the T.I.M.E. case, no issue of reasonableness of rates is here presented—in fact, the rates filed are not challenged. The gravamen of the complaint is that defendant carried the goods over the wrong route for which error it should not be charged.

Plaintiff has obtained a ruling from the Commission in an administrative proceeding that the practice was unreasonable. However, merely because the word "unreasonable" appears in the T.I.M.E. opinion, wherein a recovery for unreasonable rates was denied, does not make it logical to place the decision here upon the reasoning that T.I.M.E. held that no common law remedy was saved to a shipper aggrieved by an unreasonable rate, that the determination of "unreasonable rate" was an administrative question; and, therefore, because misrouting was unreasonable and so determined in an administrative proceeding, no common-law remedy was available or preserved by the exceptive provisions of the statute (Section 216(j), 49 U.S.C.A. § 316(j): "Nothing in this section shall be held to extinguish any remedy or right of action not inconsistent herewith."). In my opinion, this is specious syllogistic reasoning wherein parallelism is sought to be created by looking only at the words "unreasonable" and "administrative" without analyzing the real basis underlying the result in the T.I.M.E. case. The opinions therein of Mr. Justice Harlan for the majority and Mr. Justice Black for the minority four members of the court trace the legislative history carefully and exhaustively. Their respective views are stated with great clarity and, although differing in result on the specific facts with which they were dealing, even the majority opinion does not preclude a decision that on the facts here presented plaintiff would not have a right to be heard in a federal court.

As the Supreme Court pointed out, "the Motor Carrier Act apparently sought to strike a balance between the interests of the shipper and those of the carrier and * * * the statute cut significantly into pre-existing rights of the carrier to set his own rates and put them into immediate effect * * *." Thus "[u]nder the Act a trucker can raise its rates only on 30 days' prior notice, and the I.C.C. may, on its own initiative or on complaint, suspend the effectiveness of the proposed rate for an additional seven months while its reasonableness is scrutinized." T.I.M.E., 359 U.S. at pages 479–480, 79 S.Ct. at page 913. And as the T.I.M.E. decision further notes, this seven-month suspension period is usually ample to permit the adjudication of the rate's reasonableness. The issue in T.I.M.E., therefore, was whether the shipper could recover in a common law action an asserted unreasonable charge when the rate had been previously filed with the Commission after notice to all concerned and had been approved by the Commission to the extent of permitting it to prevail when it could have been suspended. Congress having provided the shipper with such a built-in protection, it was not unreasonable to assume that the shipper's common law right to recover on the theory that the filed rate was unreasonable was implicitly extinguished by the Act. In fact, to allow such a remedy to stand would be inconsistent with and undercut the anticipatory procedures provided.

The situation is vastly different here. As to unreasonable routing practice no built-in protection for the shipper has been provided. Nor does a shipper have notice that it will be routed around Robin Hood's Barn until after this has actually occurred. In effect the shipper is in a position similar to that of a shipper who has been charged a rate in excess of the filed tariff. In such a situation even the legislative history referred to in T.I.M.E. indicates that such overcharges can still be recovered in a court proceeding.[1] That decision also suggests a distinction both pertinent and applicable here. The shipper in T.I.M.E. was relying on certain legislative history to support its view that there existed a common law remedy for the recovery of unreasonable rates. In reading this history contrary to the shipper's view, the Court noted Commissioner Eastman's testimony as distinguishing "between the availability of a judicial remedy in respect of inapplicable tariff rates and the unavailability of such a remedy in respect of rates claimed to be 'unreasonable' though embodied in a filed tariff." The former situation seems clearly applicable to this case, since it is claimed by plaintiff, not that the tariff rate itself is unreasonable, but that the application of this rate to the particular shipment was unreasonable.

The Supreme Court "has frequently had occasion to say that interpretations of statutes by agencies charged with their administration are entitled to very great weight." Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397; Skidmore v. Swift & Co., 1944, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124. Although it does not reach the status of an agency interpretation, the analysis of the situation now before this court made by the Interstate Commerce Commission, Office of the General Counsel, with respect to the effect of the T.I.M.E. case on this case is so accurate that it is entitled, in my opinion, both to respect and to weight.

> "Thus, the claim [in the instant case] is not that the rate charged was intrinsically unreasonable, rather the controversy is over which of two rates, each embodied in published tariffs of the carrier, should have been charged. The T. I. M. E. and Davidson cases do not purport to deal with the present situation.

1. T. I. M. E., footnote 18, 359 U.S. at pages 477–478, 79 S.Ct. at page 912, reads in part:

"It is suggested that Congress was fully informed at the time of passage of the Transportation Act of 1940 of 'an existing interpretation' of the Motor Carrier Act which would allow common-law actions for the recovery of unreasonable rates. We do not so read the legislative history relied upon. On the contrary, Commissioner Eastman, testifying before the Senate Committee, appeared to distinguish between the availability of a judicial remedy in respect of inapplicable tariff rates and the unavailability of such a remedy in respect of rates claimed to be 'unreasonable' though embodied in a filed tariff. The Commissioner said:

" 'So far as reparation is concerned, there is no reason why these provisions should not be applied to motor carriers as well as to railroads. They were omitted from the Motor Carrier Act only because of the desire to lighten the burdens of the motor carriers in the early stages of regulation, in the absence of any strong indication of public need. Motor carriers have practically no traffic which is noncompetitive, and there is little danger that they will exact exorbitant charges. Since the Motor Carrier Act became effective in 1935, the Commission has not once had occasion to condemn motor-carrier rates as unreasonably high. I don't think we have had any complaints to that effect. It follows that there is nothing to indicate that shippers need provisions to enable the Commission to award reparation for damages suffered because of unreasonable charges.

" 'The occasion for reparation from motor carriers would chiefly arise, therefore, in the event of overcharges above published tariff rates. Shippers can recover *such overcharges* in court as the law now stands.' " (Emphasis added.)

"Hearings before Senate Interstate Commerce Committee on S. 1310, S. 2016, S. 1869, and S. 2009, 76th Cong., 1st Sess., pp. 791–792."

"Obviously, once a carrier takes possession of a shipment, the shipper has no way to guard against a carrier misrouting his shipment. It would be contrary to all sense of fair play to hold that a shipper is so at the mercy of a carrier that the latter may collect and retain the rate over whatever route it chooses to transport even though it violates its duty to select the cheapest route available to it. Consequently, the courts have recognized the right of shippers to protection from misrouting by the transporting carrier. For example, in Wooleyan Transportation Co. v. George Rutledge Co., 162 F.2d 1016 (3rd Cir.1947), the carrier quoted the shipper an intrastate rate for transporting goods between two points in New Jersey. The carrier, however, moved the goods via its interstate route and demanded payment on the basis of its higher interstate route, contending that it was required by the Interstate Commerce Act to observe its interstate rate by the route of movement. In denying recovery by the carrier the Court of Appeals said:

" ' * * * The contract between the parties was for intrastate carriage of the goods by motor truck between Montclair and Pedricktown, * * * Instead, for its own convenience and because of certain union contracts with its truck drivers, it transported the goods over a longer interstate route, via Wilmington, Delaware. By such unilateral action, however, it could not convert a lawful contract for intrastate carriage into one for interstate carriage so as to impose upon the defendant shipper liability for a rate higher than it had agreed to pay.

" ' * * * Here, however, the plaintiff, with the obvious direct intrastate route open to it, took the defendant's goods around Robin Hood's barn in getting them from Montclair to Pedricktown.' "

Counsel concludes (as do I) that:

"As I have indicated, the T. I. M. E. and Davidson cases do not require the conclusion that a suit to recover for misrouting is not judicially cognizable."

As Mr. Justice Black pointed out in his dissent in T. I. M. E.:

"There can be no serious doubt that at common law a cause of action existed against carriers who charged unreasonable rates. See Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 436, 27 S.Ct. 350, 353, 51 L.Ed. 553; Arizona Grocery Co. v. Atchison, T. & S. F. R. Co., 284 U.S. 370, 383, 52 S.Ct. 183, 184, 76 L.Ed. 348.[1] Nor can it be questioned that the Motor Carrier Act confirmed the common-law policy against unreasonable rates and in fact expressly made such rates illegal.[2] It is also clear that the Act attempted to preserve all pre-existing remedies which did not directly conflict with its aims.[3]" 359 U.S. at pages 480–481, 79 S.Ct. at pages 913–914.

There may be sufficient reasons for denying redress in the courts to shippers for claims that filed rates are unreasonable but it by no means follows that shippers should be deprived of access to the courts for all wrongful acts committed by motor carriers, for example, mishandling, erroneous billing, misrouting, etc.

Such a determination would not prejudice the carrier's defenses such as agreement to the interstate route, payment of the charges with knowledge, acquiescence, estoppel, laches, etc., any or all of which may well defeat plaintiff's claim but at least plaintiff would thus have a determination on the merits and not be left without remedy merely because its complaint mentioned a statutory basis for its asserted claim.

I would reverse.