**JOHNSON MACHINE WORKS, INC.,**
Defendant-Appellant,

v.

**CHICAGO, BURLINGTON AND QUIN-
CY RAILROAD COMPANY,**
Plaintiff-Appellee,

and

Chicago and Northwestern Railway Com-
pany, Third Party Defendant-
Appellee.

No. 16736.

United States Court of Appeals
Eighth Circuit.

Jan. 16, 1962.

794

Albert V. Hass, Chariton, Iowa, made argument for the appellant and was on the brief.

J. C. Pryor, Burlington, Iowa, made argument for appellee, Chicago, Burlington & Quincy Railroad Co. Pryor, Riley, Jones & Walsh, Burlington, Iowa, were with him on the brief.

Ray Johnson, Jr., Des Moines, Iowa, made argument for third-party appellee, Chicago and Northwestern Railway Co. Davis, Huebner, Johnson, Burt & Fulton and also Frank W. Davis, Des Moines, Iowa, were with him on the brief.

Before VOGEL, VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff, Chicago, Burlington and Quincy Railroad Company (Burlington), brought this action against defendant Johnson Machine Works, Inc., to recover $10,077.81 alleged to be the balance due for freight charges for carriage of 34 carloads of fabricated steel over its lines from Chariton, Iowa, to Council Bluffs, Iowa, and thence over the lines of the Chicago and Northwestern Railway Company (Northwestern) to Box Elder, South Dakota. Defendant denied plaintiff's right to recover the additional freight charges, claiming the bills of lading and tariffs constituting the carriage contract did not as a matter of law entitle plaintiff to such relief. Defendant also, by leave of court, filed a third-party complaint against Northwestern, claiming in event defendant is held liable to plaintiff for undercharges, Northwestern is liable to it for misrouting the shipment, since a route was available over which the freight could have been carried at the rate set out in the shipping papers and which amount had been paid by the defendant.

Jurisdiction is established by reason of diversity of citizenship and the jurisdictional amount.

At the close of the evidence the trial court sustained separate motions for directed verdict made by Burlington and Northwestern. Final judgment was entered awarding plaintiff damages against the defendant in the amount of the undercharges claimed. Defendant's third-party complaint against Northwestern was dismissed and this timely appeal followed.

Defendant insists the trial court erred in sustaining each of the motions for directed verdict and in entering judgment pursuant to the ruling upon such motions. We shall first consider the motion directing the verdict on plaintiff's claim.

The crucial question presented upon the appeal from the judgment entered in favor of the plaintiff is whether under the facts here presented the defendant as a shipper can be charged with designating the routing of his shipment. If so, it is clear that under §§ 15(8) and 15(9) of the Interstate Commerce Act (49 U.S.C.A. §§ 15(8) and 15(9)) the carrier is bound to follow the shipper's routing.

It is well-established when the shipper designates the routing, the rate set out in the published tariff covering such route is the only lawful charge that can properly be made. Deviation from such route is not permitted. The applicable law is thus stated in Louisville & Nashville R. R. v. Maxwell, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853, as follows:

"Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is

not an excuse for paying or charging either less or more than the rate filed."

The principle just stated was fully considered and applied by this court in Silent Sioux Corp. v. Chicago & Northwestern Ry., 8 Cir., 262 F.2d 474. Numerous supporting authorities are there cited and discussed.

■ Defendant concedes that if only misquotation of rates is here involved, it cannot prevail. Defendant urges that a misrouting question is here presented. The law as to misrouting is not briefed. However, it is conceded that a carrier is responsible for damages in misrouting. It appears to be established law that where a shipper gives no routing directions and several routes carrying different rates are available, it is ordinarily the duty of the carrier to use the route in which it participates which carries the lowest rate, and that a carrier is liable to a shipper in a case of misrouting for the difference between the higher rate charged and the rate applying over the less expensive routing. Northern Pacific Ry. v. Solum, 247 U.S. 477, 483, 38 S.Ct. 550, 62 L.Ed. 1221; Galveston, H. & S. A. Ry. v. Lykes Bros., (D.C.Tex.) 294 F. 968, 972.

We will at this point summarize the facts bearing upon the misrouting issue. Defendant, a steel fabricator at Chariton, Iowa, located upon the Burlington line, had a contract to furnish steel to Weitz Company, prime contractor on a Government project near Box Elder, South Dakota. Defendant obtained its required steel for such project from Pennsylvania points. The steel was shipped by rail in carload lots to Chariton, Iowa, on a transit basis and was there unloaded and fabricated, and was thereafter delivered to Burlington for shipment to Box Elder, South Dakota. The finished product was rather bulky, extending to a height of some fifteen feet, presenting some clearance problems. Defendant sought and obtained information as to routes and clearances from both the Northwestern and Burlington. It

would appear that proper clearance was available both upon the routing specifically designated and the available route carrying the lesser transit rate hereinafter discussed.

Defendant delivered 34 carload shipments of fabricated steel to Burlington during the period from February 1, 1957, to June 3, 1957. Shipping orders signed by the defendant and reshipping memoranda and credit slips, which identified defendant's inbound freight bills covering the shipment of steel from Pennsylvania to Chariton together with the inbound bills of lading, which were surrendered for credit on the outbound shipment, were given to Burlington. These reshipment memoranda clearly indicated that the transit rate was claimed and the purpose of surrendering the inbound bills of lading was to obtain the transit rate.

The shipping orders each described the carload of fabricated steel and as to routes stated, "C. B. & Q. to Council Bluffs, Iowa—C. N. W." and designated Northwestern as delivering carrier at Box Elder, South Dakota. All such orders contained the word "transit". Exhibit 1, one of the shipping orders, sets out the weight of the carload of fabricated steel, the word "transit", and the following:

"Bureau #25 P&LE Aliquippa Pa WB 908
March 24, 1956.
Pro 35 April 13 1956 paid in 46360 at 91¢

| * | * | * | * | * | * |
|---|---|---|---|---|---|

| Class or Rate | Check Column |
|---|---|
| 130 | |
| 91 | |
| 39 | 18275 |
| 4½ | 2109 |
| | ———— |
| | 20384" |

The "130" represents the transit rate from Aliquippa, Pa., to Box Elder, South Dakota of $1.30. The "91" represents the 91¢ rate paid at the time of the shipment from Aliquippa to Chariton, Iowa. The "39" and the extension "18275" rep-

resent the balance of the transit rate due at the time of the completion of the shipment, and the "4½" and the extension represent the charge for the stop-over privilege at Chariton. Most of the other shipping orders contain similar data.

It appears from the exhibits received in evidence by stipulation that the total paid on the 34 carload shipments from Chariton, Iowa, to Box Elder, South Dakota, is $9,069.40, and that the rate fixed by the tariff for such shipment over the Burlington to Council Bluffs and from there to Box Elder on the Northwestern is in the aggregate amount of $19,147.26. Thus, if the rate urged by the plaintiff applies, a balance remains due of $10,-077.81 after allowing credit for the payments made at the time of shipment. Judgment was entered for this amount and interest. It is stipulated:

"[T]here was a route available from Chariton, Iowa via C. B. & Q., Albia, via M. & St. L. through Dillon, to Marshalltown; then via Chicago and Northwestern Railway Company to Box Elder, South Dakota, with tariffs applicable thereto at the time the shipments covered by the bills of lading, Plaintiff's Exhibit 1 through Plaintiff's Exhibit 34, inclusive, were made; that if the shipments represented by said bills of lading, Plaintiff's Exhibit 1 through Plaintiff's Exhibit 34, inclusive, had been so routed and carried, transit would have applied, and if the same tonnage had been surrendered by Johnson Machine Works, Inc., as appears in each bill of lading and the papers attached thereto, including the Reshipping Memorandum and Credit Slips, the charges appearing under the heading 'Charges As Paid' in the corrected freight bills attached to each bill of lading would have been correct."

Thus, if the tariff rate on the transit route described in the above stipulation, which the evidence shows was an available route, is used, the amount collected by plaintiff from the defendant and list-ed in the shipping papers at the time of reshipment from Chariton would have covered in full the transportation charges from Chariton to Box Elder on the 34 carloads of fabricated steel. Defendant has paid the plaintiff the freight due in the amount computed and shown on the shipping papers at the time of the shipment.

If the increased charges here claimed are due to misrouting by Burlington, it cannot recover for the increased rates due to its misrouting. It is defendant's contention that the additional charges claimed were due solely to misrouting of the shipment by Burlington.

It would appear that the routing was inserted in the shipping order by defendant. It fairly appears that the defendant was induced to put in such routing upon the recommendation of both Burlington and Northwestern, with the assurance that the transit rate it paid at the time of shipment was available on such routing. Both of the railroads and the defendant are charged with knowledge of the tariffs. It is apparent that the railroad agents and the defendant at the time of shipment considered the transit rate applicable to the routing. It now definitely appears that they were all mistaken in this respect. Such circumstances alone would create no liability on the part of the railroads as no more than misquotation is involved and as hereinabove stated, no recovery can be made by a shipper for misquotation of rates.

There remains for consideration defendant's contention that plaintiff misrouted the shipments and that plaintiff is liable to defendant for the damage caused by the misrouting.

The Interstate Commerce Commission has in a long line of decisions consistently squarely held that where the rate and the route are inserted by the shipper in the bill of lading and they do not coincide, it is the duty of the initial carrier's agent to call the shipper's attention to the inconsistency and inquire whether he desires the rate or the routing, and that.

the carrier's agent should refrain from executing bills of lading containing contradictory provisions. Republic of France v. Missouri, Kansas & Texas Ry., 77 I.C.C. 383 (1923); Standard Hardwood Lumber Co. v. Penna. R. R., 157 I.C.C. 100 (1929); St. Louis Cooperage Co. v. B. & O. R. R., 161 I.C.C. 258 (1930); Cudahy Packing Co. v. Baltimore & Ohio R. R., 173 I.C.C. 121, 124 (1931); Inland Steel Co. v. Union Pacific R. R., 264 I.C.C. 267 (1946); Vernon Lumber Corp. v. Atchison, Topeka & Santa Fe Ry., 281 I.C.C. 789 (1951); Cf. Sieck & Snediger v. Atchison, Topeka & Santa Fe Ry., 283 I.C.C. 337 (1951); Texas Eastern Transmission Corp. v. Louisville & Nashville R. R., 292 I.C.C. 15 (1954).

The basis assigned by the Interstate Commerce Commission for granting relief in the cases just cited is illustrated by excerpts from their opinions:

"We have over a long period of time consistently found that where there is a conflict between a rate and routing instructions in the bill of lading it is incumbent on the initial carrier to obtain further and more definite instructions and that its failure to perform this duty makes it chargeable with misrouting and liable for any resulting damage." Cudahy, 173 I.C.C. 121, 124.

"In the factual situation here presented, it is obvious that the through rate of 87 cents could not be protected on these shipments with milling in transit at Albuquerque. The shipper's instructions were impossible of execution under the governing tariffs, and it was the duty of the Southern Pacific to so notify the shipper and to ask for further instructions. Failure to do so made that carrier liable for any damages which the shipper suffered as a result of being denied an opportunity to correct or clarify its instructions." Vernon, 281 I.C.C. 789, 791.

"The general rule is that when a shipper has signed and accepted a bill of lading, it is to be presumed that he directed the routing specified, and is bound thereby. However, the presumption is rebuttable, and the rule does not apply where it can be found that the routing was in effect a carrier's routing.

\*     \*     \*     \*     \*     \*

"The agent of the Texas & New Orleans testified that the complainant generally left 'routing in the hands of railroads in such matters as the above and confirm their diversions on routes we give them,' and that such was the case with respect to the instant shipments. It is thus clear that this agent did in fact route the 30 carloads of pipe. It is also reasonable to conclude, since the time in transit saved by use of the Nashville route did not exceed 1 day, that had the true tariff situation been called to the complainant's attention by the defendants' agent, no change would have been made in the authorization to divert only at the joint through rate." Texas Eastern Transmission Corp., 292 I.C.C. 15, 16.

"In Brownyard v. Union Pac. R. Co., 136 I.C.C. 447, and 148 I.C.C. 444, 448, in respect of a bill of lading signed by the shipper and on which a certain route was shown, the Commission said:

'By force of custom such a bill of lading may be taken as strong presumptive evidence that the shipper designated the routing, but this presumption may be rebutted by clear evidence to the contrary. We regard this matter as important, for a carrier ought not to be in a position where it can absolve itself from its routing responsibilities merely by obtaining the signature of a shipper unversed in legal technicalities to a bill of lading containing a route written in by its agent.'

"The presumption that the shipper directed the routing of these shipments has been satisfactorily re-

butted." Sieck & Snediger, 283 I.C. C. 337, 340.

Burlington urges in its brief that American Salt Co. v. Atchison, Topeka & Santa Fe Ry., 179 I.C.C. 489; Anderson, Smith & Hamilton, Inc. v. Chicago & N. W. Ry. Co., 195 I.C.C. 82, 87; General Foods Corporation v. Louisville & Nashville R. R., 246 I.C.C. 142, support its theory that the tariff controls. Our examination of such cases satisfies us that the general rule of the Commission hereinabove stated was recognized in such cases but that the Commission under the facts of the particular cases found that the general rule did not apply.

There are very few court cases treating with the problem here presented. Fleming & Sons v. Gulf, C. & S. F. Ry., 5 Cir., 187 F.2d 536, holds that where the routing instructions are ambiguous, it is the duty of the carrier to require that instructions be clarified or to treat the instructions as incomplete. The shipper was protected on the minimum tariff rate available between the point of shipment and destination. In reaching said result, the court states that it observes its conclusion is in accord with the determinations of the Interstate Commerce Commission, and states:

> "These are of course not conclusive, but are particularly persuasive when related to the technical features of tariff applications and procedures, and the proper construction of routing directions." 187 F.2d 538.

The Supreme Court has frequently recognized that long-standing interpretations of an act by the Commission charged with its enforcement are entitled to great weight and respect. New York, New Haven & Hartford R. R. v. Interstate Commerce Commission, 200 U.S. 361, 401, 26 S.Ct. 272, 50 L.Ed. 515; United States v. Chicago North Shore & Milwaukee R. R., 288 U.S. 1, 13, 53 S.Ct. 245, 77 L.Ed. 583.

A careful consideration of the authorities heretofore cited, particularly the long line of consistent decisions of the Interstate Commerce Commission, leads us to the view that where the shipper designated route and at the same time clearly indicates on the shipping papers that he is claiming a transit rate available between the points involved in the shipment but not applicable to the specific route designated, that the carrier is obligated to determine by inquiry whether the shipper desires the routing or the rate. The shipping papers which designate a route and a rate which is not applicable to such a route but is applicable to another route as to which the receiving railroad would be the initial carrier in effect designate two routes, one explicitly and the other by necessary implication. Thus the papers on their face are ambiguous and under such circumstances it would appear to be the carrier's duty to resolve the ambiguity and ascertain from the shipper his real intention. We agree with the reasoning of the Interstate Commerce Commission decisions to the effect that any presumption arising from the ambiguous designation of a particular route by the shipper may be rebutted by the clear indication on the part of the shipper expressed to the carrier that his principal concern is the rate, not the route.

The cases denying a shipper relief in instances of misquotation of rates are based largely on the public policy of avoiding discriminatory rates and the fear that the device of misquotation could readily be used for the purpose of affording one shipper an advantage over another. The opportunity for discrimination in the situation presented by the misrouting in this case is not apparent. There is no reason to believe that the shipper here had any real interest in the particular routing. Ordinarily the shipper's interest is to get the commodity to its destination at the lowest available rate and the choice of routes would usually be a matter of no concern to the shipper.

The result here reached is in no way inconsistent with the views expressed in our recent Silent Sioux opinion. In that

case routing problems, such as here involved, were not presented.

■ Upon plaintiff's motion for a directed verdict, defendant is entitled to have the evidence viewed in the light most favorable to it. It seems clear to us that there is a direct inconsistency between the route designated and the transit rate claimed in the shipping papers. Burlington by initially accepting payment at the transit rate available recognized that defendant was claiming that it was intending to ship in such a manner as to be entitled to the transit rate. If defendant had been advised of the inconsistency between the route and the rate and Burlington had requested it to choose between the route and rate, there is little doubt but what it would have designated its preference for the rate over the route. In any event, on the record here made, we believe the defendant at the very least made a fact issue for the jury on overcoming any presumption that might flow from the fact that it had signed shipping papers designating the route here used.

■ Defendant made neither a motion for a directed verdict nor a motion for judgment n. o. v. Hence, the maximum relief to which it is entitled by reason of the court's error in directing judgment against it is a new trial. Johnson v. New York, New Haven & Hartford R. R., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77; United States v. Mountain State Fabricating Co., 4 Cir., 282 F.2d 263, 265.

The trial court erred in sustaining plaintiff's motion for a directed verdict. The judgment entered in favor of the plaintiff and against the defendant is vacated.

■ Our consideration of defendant's appeal from the direction of the verdict against it upon its third-party complaint against Northwestern and the judgment of dismissal based thereon satisfies us that the trial court's action in this respect must be affirmed. Burlington, not Northwestern, was the initial carrier entering into the carriage contract here involved. The route here used must necessarily have been designated either by the defendant or Burlington. The fact that Northwestern may have given defendant erroneous information as to rates or routing does not establish any legal liability on the part of Northwestern for misrouting as such term is used in the carriage cases. What Northwestern did amounts to no more than a misquotation of rates. It is clearly established in Silent Sioux, supra, and the cases therein cited, that no liability attaches to a carrier as a result of rate misquotations.

Defendant has failed to demonstrate that the court committed error in directing a verdict for Northwestern upon defendant's third party complaint.

The portion of the judgment dismissing defendant's third-party complaint against Northwestern is affirmed.

The judgment awarded plaintiff on its complaint against defendant is reversed and vacated, and this case is remanded to the district court for a new trial upon plaintiff's claim.