**TENNESSEE VALLEY MUNICIPAL GAS ASSOCIATION et al.,**
Petitioners,

v.

**FEDERAL POWER COMMISSION,**
Respondent,

**Alabama-Tennessee Natural Gas Company, Intervenor.**

Nos. 71–1698, 71–1728.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 11, 1972.

Decided Oct. 25, 1972.

Mr. Reuben Goldberg, Washington, D. C., with whom Mr. Leo J. Steffen, Jr., Washington, D. C., was on the brief, for petitioners.

Mr. Platt W. Davis, III, Atty., F. P. C., of the bar of the Supreme Court of Texas, pro hac vice by special leave of Court, with whom Messrs. Gordon Gooch, Gen. Counsel, Leo E. Forquer, Sol., and J. Richard Tiano, First Asst. Sol., F. P. C., were on the brief, for respondent. Mr. George W. McHenry, Jr., Atty., F. P. C., also entered an appearance for respondent.

Mr. Stanley M. Morley, Washington, D. C., with whom Mr. Louis Flax, Washington, D. C., was on the brief, for intervenor. Mr. Edward A. Caine, Washington, D. C., also entered an appearance for intervenor.

Before FAHY, Senior Circuit Judge, and TAMM and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

This is a proceeding to review orders of the Federal Power Commission in two related rate cases.[1] Since the rates involved have been under continuous challenge since 7 June 1966, there has been ample opportunity to develop procedural complexity defying easy summary. However, a limited number of FPC orders constitute the focus of the substantial disputes in this case.

On 17 October 1969 the FPC dismissed a complaint under Section 5(a) of the Natural Gas Act,[2] claiming that existing rates for natural gas were excessive, brought by the Tennessee Valley Municipal Gas Association ("Association") against its supplier, Alabama-Tennessee Natural Gas Company ("AT"). Dismissal was on the grounds that the record was too "stale" to form the basis for a prospective ruling and that it appeared "highly conjectural that initiation of a new Section 5 proceeding at this time would be in the public interest."[3]

Apparently motivated by a desire to avoid judicial review,[4] on 6 February

---

1. The proceeding under Section 5(a) of the Natural Gas Act, styled "Tennessee Valley Municipal Gas Association, et al., Complainants v. Alabama-Tennessee Natural Gas Company, Respondent, Docket No. RP 66–25," was brought on 7 June 1966. It resulted in an FPC Order and Opinion (No. 594) on 5 May 1971. (Application for rehearing denied by order of 2 July 1971.) The petition in No. 71–1698 brings before this court for review that order and several others entered in the same proceeding.

The proceeding under Section 4(d) of the Natural Gas Act, styled "Alabama-Tennessee Natural Gas Company, Docket No. RP 71–7," was initiated on 1 September 1970. It ended with an order issued on 18 May 1971, applying the rate of return determination in Opinion No. 594 to Docket No. 71–7. (Application for rehearing denied by order issued 14 July 1971.) These orders are brought here for review by the petition in No. 71–1728.

2. Section 5(a) of the Natural Gas Act provides as follows:

(a) Whenever the Commission after a hearing had upon its own motion or upon complaint of any State, municipality, State commission, or gas distributing company, shall find that any rate, charge, or classification demanded, observed, charged, or collected by any natural-gas company in connection with any transportation or sale of natural gas subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory, or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order: *Provided, however*, That the Commission shall have no power to order any increase in any rate contained in the currently effective schedule of such natural gas company on file with the Commission, unless such increase is in accordance with a new schedule filed by such natural gas company; but the Commission may order a decrease where existing rates are unjust, unduly discriminatory, preferential, otherwise unlawful, or are not the lowest reasonable rates.

3. Order Dismissing Complaint and Terminating Investigation issued 17 October 1969. See Joint Appendix (hereafter "J. App.") at pp. 112–14.

4. On 16 January 1970 the Association filed a petition for review in this court of the orders dismissing the complaint and terminating the rate investigation and deny-

1970 the FPC vacated its dismissal and reopened the proceedings to update the record and compile figures from a more recent test period.[5] This Section 5 proceeding was finally resolved on 5 May 1971.[6]

While in one sector defending in the Section 5 proceeding, in another AT went over to the offensive by filing for a rate increase under Section 4 of the Act (based on its cost of service during the 12 months ending 31 May 1970). Under the authority of Section 4 increased rates went into effect, contingent on a refund to the extent that they were later found to be excessive, on 17 March 1971. By stipulation of the parties, the rate of return decision in the Section 5 case was incorporated in the Section 4 proceeding by an FPC order of 18 May 1971.[7]

I. *Retroactivity*

The Association's primary contention is that the FPC erred in its dismissal of the Section 5 action on 17 October 1969, and further, that whatever rate is found legal must be applied retroactively as of the day that error was made. We agree that the dismissal on 17 October 1969 was erroneous; we disagree with the Association as to the appropriate measure of retroactive relief.

A. *Legal Error*

The Commission's action on 17 October really consisted of two distinct steps. First, the FPC decided that it could not, in 1969, set fair prospective rates on the basis of a test period from 1966. While the FPC has in the past based rate decisions on aged records, and time alone does not automatically render a record "stale," [8] we cannot say that there was legal error in the decision that the record would have to be updated to reflect, at least, changes in the money market. Although the first examiner had actually considered this factor, his decision preceded that of the Commission by more than a year. Thus, while the other reasons given by the Commission for its decision on staleness are less persuasive,[9] we disagree with the Association's argument that the FPC should have decided *solely* on the basis of the three-year-old record presented at that time.[10]

The second part of the FPC's action on 17 October 1969 was its decision to *dismiss* the Section 5 proceeding rath-

---

ing rehearing. Tennessee Valley Municipal Gas Association, et al. v. Federal Power Commission, No. 23,883. On 26 January 1971 the Association filed a motion in this court for expedited review of the Commission's orders.

The Commission won dismissal of the petition for review in No. 23,883, on the ground that vacation of the order of 17 October 1969 rendered the case moot. However, the court granted dismissal without prejudice to the filing of a motion to reinstate the petition for review if the Commission did not proceed expeditiously.

5. The first examiner's decision was based on a "1966 test period." The Commission's ultimate decision, on 5 May 1971, was based on a "1969 test period."

6. Opinion and Order Determining Fair Rate of Return and Dismissing Complaint, issued 5 May 1971. J.App., p. 228 et seq.

7. Order Requiring Filing of Reduced Rates and Refunding of Excess Revenues, issued 18 May 1971. J.App., p. 244 et seq.

8. Alfred C. Glassell, Jr., 30 F.P.C. 1331, 1332 (1963); ICC v. Jersey City, 322 U.S. 503, 515, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944).

9. The Commission also sought to justify its decision that the record was stale on the grounds that (1) tax rates had changed since the 1966 test period and (2) AT's supplier had changed its rates. However, the tax rate change was minimal and could have been easily calculated into the record. In addition, AT's supplier's rates had been reduced—hardly a reason for staleness of a record proffered to establish excessive resale rates.

10. *A fortiori*, we must deny the Association's claim for an order that the FPC now decide a fair rate, with retroactive effect, solely on the record of the 1966 test period. (See discussion under Section E.)

er than to *reopen* the matter for further investigation and updating of the record. Reopening for further hearings was precisely what the Commission later chose to do when its decision was challenged in this court. We hold that failure to do so on 17 October 1969 was legal error.

In its order of 5 May 1971 the FPC says that the "predicate of the Association's request for retroactive rate reduction has not been established [1] "because we do not confess to have committed legal error in ordering the dismissal, and [2] because the first examiner's decision issued in this proceeding contained the finding that Alabama-Tennessee's rates were not excessive." [11] However, as to [1], the dismissal, the Commission's vacation of its dismissal seems to us very close to an admission that it *did* err in refusing to order *reopening and updating,* of an admittedly stale record, on 17 October 1969.

The error here is further established by the FPC's own articulated ground [2] for the dismissal. In its order, the Commission noted that reopening would require such extensive updating as to approximate an entire new proceeding. It went on to say that it appeared "highly conjectural" that such a new proceeding would be in the public interest.[12] This latter finding could only have been based on the Commission's conclusion that AT's rates were in fact fair, an approval of the examiner's finding. Since we cannot believe the FPC omniscient, that conclusion must have been founded on the very record which the Commission neither adopted nor rejected and which it in fact held not to form a valid basis for any decision at all! While it may be ingenious to rely on a record, *and* ignore it as stale, all within the terms of the same order, it is also clear legal error to do so.

### B. *Mootness and Reviewability*

AT counters with the contention that, no matter how erroneous, the dismissal on 17 October 1969 cannot be reviewed here because it was in fact vacated by the FPC and that action was appealed to this court. It is true that this court dismissed the Association's petition for review of the dismissal once a reopened investigation had begun.

 However, that petition to this court, on 16 January 1970, was based exclusively on a challenge to the FPC's ruling that the record *could not be updated.* Once the Commission started an updating proceeding, that claim necessarily became moot. Quite distinct is the further claim now advanced here: that the FPC erred in not ordering (in its 5 May and 18 May 1971 orders) retroactive application of the just rate to put the Association in the position it would have held absent the Commission's first error. This latter claim could not even be properly raised until the Commission entered a final and reviewable order in the rate proceeding itself. This court's dismissal of the first petition to review could not, therefore, have either dealt with a claim for retroactive relief or established that such a claim was mooted by the FPC's vacation of its own dismissal of the Section 5 claim.

As this court had given leave to do, the Association on 15 April 1971 moved to reinstate its petition (of 16 January 1970) to review the 17 October 1969 dismissal on the ground that the FPC had not expedited its decision. That motion was denied by this court on 25 May 1971. Far from a ruling on the retroactivity issue presented here, that order merely noted that "the orderly process of judicial consideration" would be served by considering the Association's various claims during the regular review of the order of 5 May 1971.

 Thus, the appropriate relief for the FPC's error in delaying reopening to update the record remains a valid and important question before this court. To hold otherwise would be now to preclude the Association from raising a

---

11. J.App., p. 241.

12. J.App., p. 114.

claim which has previously been unavailable to it because not yet ripe.

### C. *Updating as the Alternative*

AT might also contend that the Association has all along been alleging error on the "staleness" decision and has not adequately pressed the claim that the FPC should have immediately reopened the proceeding on 17 October 1969. Obviously, the Association has emphasized the "staleness" issue because a holding of legal error on that question, on its theory of the case, might lead to broader retroactive relief. However, a fair reading of the Association's challenges clearly shows that it conceded the possibility of some necessity for updating and urged the Commission to reopen the record as necessary.[13] The difference between what the Association asked and what the Commission eventually did was how extensive an updating was required to produce an adequate record. Indeed, given the generally prospective nature of Section 5 rate relief, and the Association's steadfast claim that AT's rates were illegal, this argument in the alternative was the Association's inevitable position.

The Association has repeatedly and without qualification challenged the dismissal at every appropriate stage of this proceeding. Although it failed to place primary emphasis on the particular argument which we accept, AT and the Commission were adequately apprised of its claim that dismissal, rather than expeditious updating and decision, was error warranting retroactive relief.

### D. *Proper Retroactivity*

Since the FPC erred in not immediately reopening the proceeding, its orders of 5 May and 18 May 1971 should have corrected that error. If the policy of the Natural Gas Act is not arbitrarily to be defeated by uncorrected Commission error, the Association must be put in the same position that it would have occupied had the error not been made.

■ The measure of the retroactivity which the Commission must grant to cure its legal error is the time elapsed between its wrongful dismissal of the Section 5 case and the time it cured that error by vacating the dismissal and reopening the hearings. This period, from 17 October 1969 to 6 February 1970, constitutes 112 days.

■ The grant of retroactive relief for this period does not conflict with the anti-reparations language in the statute.[14] That language was designed to protect established expectations under legally established rate schedules. It forbids belated determinations that rates charged in the past were excessive. The Supreme Court has noted that "[g]as purchasers . . . have no protection from excessive charges collected during the pendency of a § 5 proceeding."[15] However, there is no reason to

---

13. In its Application for Rehearing of Order issued 17 October 1969 the Association suggested that the Commission make "tax adjustments" (J.App., p. 119) and look at more recent AT annual reports (J.App., p. 122). The Association and the FPC obviously disagreed on the question of how extensive an updating was required to produce an adequate record. We cannot say that the Commission committed legal error in deciding, once the proceeding was reopened, that a whole new test period was required. However, that disagreement between the Association and the FPC does not change the fact that the Association did suggest reopening as an alternative to decision on the record as it stood on 17 October 1969. Given this request, we do not need to decide whether the FPC's failure

to start a reopened investigation on its own motion, as authorized under Section 5(a), would have been error.

14. Section 5(a) provides that "the Commission shall determine the just and reasonable rate . . . to be *thereafter* observed and in force, and shall fix the same by order . . . ." 15 U.S.C. § 717(d)(a) (emphasis added). This has been held to mean that "under the Act the Commission has no power to make reparation orders." Federal Power Commission, et al. v. Hope Natural Gas Co., 320 U.S. 591, 618, 64 S.Ct. 281, 88 L.Ed. 333 (1944).

15. Atlantic Refining Co. v. Public Service Commission, 360 U.S. 378, 389, 79 S.Ct. 1246, 1254, 3 L.Ed.2d 1312 (1959).

extend that principle to say that gas purchasers have no protection against a legal error by the Commission which wrongfully and unfairly prolongs that pendency.

██ What the Commission must do on remand here is to compensate for its erroneous dismissal. Rather than re-examining the legality of the rates charged prior to its order of 5 May 1971, the FPC will merely be admitting that, all other stages of the proceeding remaining constant, its prospective order should have occurred 112 days earlier. AT cannot claim justifiable reliance or protectable expectations based on FPC action which was illegal. Since the legal error causing the delay was sought by and benefitted AT, it cannot reasonably complain of its correction, at its expense, now.

### E. *Improper Retroactivity*

██ The Association argues that it deserves retroactive application of the just rate as of 17 October 1969. This result might be based on one of two grounds. First, arguing that the decision should have been based on the record as it stood in October 1969, the Association claims that the FPC can only correct that error by deciding the fair rate on the basis of the 1966 test period and ordering refunds as if that decision had been made and had stood since 1969. However, because we have decided that the FPC was correct in deciding that the record in fact needed updating, which as a practical and legally proper matter precluded a decision in October 1969, we cannot agree to such a result.

Second, the Association suggests that, if the record was stale, the staleness was caused by the inexcusable inactivity of the Commission. On this basis, our

equitable powers are claimed to be sufficient to give full retroactivity, to 17 October 1969, of the rate now determined just under the updated record. We agree that this case has hardly been handled with exemplary dispatch. That is a matter of grave concern in the context of a rate proceeding whose determination, absent legal error, can only apply prospectively. Justice delayed may well become justice denied in such circumstances; and the Commission has the highest duty to expedite matters to the best of its ability.

However, some time is obviously necessary for the FPC to make its decisions. The Association has suggested no basis for determining when deliberation slides over into inexcusable delay— either in theory or on the facts of this case.[16] Without commenting on the extent of our equitable power to order retroactive rate refunds to remedy inequitable FPC delay, we simply note that, except for the legal error of dismissal discussed above, there has been no adequate showing of inequitable Commission conduct sufficient to warrant greater retroactive relief.

### F. *Retroactive Relief.*

██ The retroactive relief we command is, in essence, twofold. First, the increase over the preceding established legal rates from 17 March must be refunded to the extent that it exceeded the larger of (1) the previous legal rates or (2) just rates found in the Section 4 proceeding based on a fair rate of return of 8.25%. Second, because the legal error here caused 112 days of delay, further refunds must be ordered to place the Association in the same position it would have occupied had the prospective Section 5 ruling been issued 112 days prior to 5 May 1971.[17]

---

16. Since the Association is the party seeking equitable relief, the burden of showing inequitable conduct with some specificity falls on them.

17. If the just rates based on the record in the Section 4 proceeding are found to be greater than the just rates found under this Section 5 proceeding record, the

Section 5 retroactive refund will only apply for the period prior to 17 March (63 days in length). This result follows because even had the Section 5 decision occurred 112 days earlier, the Section 4 conditional rate increase, based on a more recent cost of service record, could have been *partially* valid as of 17 March.

## II. *Tax Treatment*

 The FPC's determination of AT's rates was based in part on cost of service figures reflecting income tax computed with the use of liberalized tax depreciation with normalization.[18] We must agree with the Association that such treatment was clearly improper with respect to pre-1970 property and post-1969 *non*-expansion property under Memphis Light, Gas and Water Division v. FPC.[19] The appropriate corrections, which should require no more than recalculations based on figures already in the record, must be made by the Commission on remand.

## III. *Rate of Return*

 The Association claims that the FPC's designation of 8.25% as the fair rate of return is not based on substantial evidence in the record or supported by adequate findings of fact. It is true that several of the findings do not support the Commission's conclusion that the Association deserved a return on equity reflecting higher than average risks. The loss of one customer has little weight in view of the also noted shortage of supply which should have made willing buyers more plentiful. And, with respect to the shortage, the FPC did improperly go outside the record to note that AT's supplier was threatening not to expand its volume supplied.

 However, taken with a correct evaluation of the *general* gas shortage the additional mention of AT's "small size and limited market area" does lend support to the Commission's conclusion. Three other companies were compared with AT for the purpose of setting a fair rate of return.[20] These companies were large and diversified, and had comparable equity ratios. While not exactly scientific, the FPC did not forsake logic in holding that AT, *a fortiori*, was entitled to a comparable rate of return. Contrary to the Association's argument, we think that the Commission reasonably explained its failure to look more deeply at price/earnings ratios.[21]

The Commission is not bound to follow any one exact route or method to find fair rates of return.[22] We hold that the Commission's method of analysis in this case, and the result it reached, were within the bounds of its discretion.

## IV. *Conclusion*

Accordingly, the orders of the Commission in Docket Nos. RP 66–25 and RP 71–7 are hereby reversed and the proceedings remanded for action consistent with this opinion.

So Ordered.

---

18. AT had previously been required by the Commission to base its rates upon the "flow-through" method. That method involves calculation of the actual federal income tax liability produced by the use of liberalized tax depreciation deductions. In contrast, under the "normalization" method, the tax expense component of the cost of service is calculated by assuming that for tax purposes the utility uses a deduction for depreciation based on the straight-line method of depreciation, *although, in fact*, the utility uses a liberalized tax depreciation deduction. Under the Tax Reform Act of 1969, P.L. 91–172, as interpreted by our decision in *Memphis Light*, gas pipeline utilities are not permitted to shift from "flow-through" to "normalization" for non-expansion property.

19. 149 U.S.App.D.C. 238, 462 F.2d 853 decided 18 February 1972, Supplemental Opinion issued 11 May 1972.

20. J.App., p. 239.

21. J.App., p. 236.

22. FPC, et al. v. Hope Natural Gas Co., 320 U.S. 591, 602, 64 S.Ct. 281, 88 L.Ed. 333 (1944).