**IOWA POWER AND LIGHT COMPANY, Petitioner,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondents.**

No. 82–2550.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1983.

Decided Aug. 3, 1983.

Lynn K. Vorbrich, Iowa Power & Light Co., Des Moines, Iowa, Curtis L. Ritland, Bradshaw, Fowler, Procter & Fairgrave, Des Moines, Iowa, John M. Cleary, Frederic L. Wood, Nicholas J. DiMichael, Donelan, Cleary, Wood & Maser, P.C., Washington, D.C., for petitioner.

William F. Baxter, Asst. Atty. Gen., John J. Powers, III, John P. Fonte, Attys. Dept. of Justice, Washington, D.C., John Broadley, Gen. Counsel, Ellen D. Hanson, Associate Gen. Counsel, Cecelia E. Higgins, I.C.C., Washington, D.C., for I.C.C.

Donald E. Engle, Vice President, Law, Nicholas P. Moros, Gen. Counsel, Commerce, Burlington Northern Railroad Co., St. Paul, Minn., Betty Jo Christian, Edward R. Leahy, Charles G. Cole, Steptoe & Johnson, Chartered, Washington, D.C., for Burlington Northern Railroad Co.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HENLEY, Senior Circuit Judge.

The major issue to be decided in this appeal is whether the Interstate Commerce Commission, consistent with its enabling legislation, can allow an incorrectly rejected tariff to take effect as of the date it would have been implemented but for the agency's prior erroneous rejection. Concluding that the Commission's action in the present case did not impermissibly conflict with the Interstate Commerce Act, and was not arbitrary or capricious, we affirm.

I

This appeal represents the latest chapter in an ongoing dispute between petitioner Iowa Power and Light Company (IPL), a public utility, and Burlington Northern Railroad Company (BN) concerning the shipment of coal from a Wyoming mine to the utility's generating plant at Council Bluffs, Iowa. Central to the controversy is a "letter of understanding" signed by the parties in connection with the coal shipments. This letter included, among other items, a base rate and rate escalation formula for rail transportation of coal from the Wyoming mine to Council Bluffs. Since February of 1978, when shipments began, IPL has received coal transported by

BN; the utility is the only shipper involved in this particular transaction.

In the same year the coal shipments started, BN submitted a tariff to the ICC specifying a rate higher than that initially agreed upon by the parties in the letter of understanding. Following the filing of a petition and complaint by IPL, see 49 U.S.C. § 10707, the Commission determined that the rate specified in the letter of understanding was a just and reasonable maximum rate. Its prescription order, dated October 1, 1980, directed BN to file tariffs consistent with the parties' prior agreement. This court subsequently denied the railroad's petition for review, upholding the Commission's action.[1] *Iowa Power & Light Co. v. Burlington Northern, Inc.,* 647 F.2d 796 (8th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982).

Thereafter, in October of 1981, BN submitted Supplement 4 to the tariff it had filed following entry of the Commission's prescription order. This supplement proposed an increase to $10.95 from the agreed-upon rate, which at that time was $7.62. Acting in response to a letter of protest filed by IPL, the ICC on October 30, 1981 rejected Supplement 4 on the ground that it constituted a violation of the agency's previously issued prescription order. During this period, IPL initiated a breach of contract action against BN, seeking a declaratory judgment, injunctive relief and damages. *Iowa Power & Light Co. v. Burlington Northern Railroad Co.,* Civil No. 81–526–B (S.D.Iowa filed Oct. 27, 1981). That action remains pending.

After the Commission's adverse decision with respect to Supplement 4, BN filed a petition for review with the District of Columbia Circuit. That court vacated the agency's order, holding that "when a rate increase is tendered to the ICC after the effective date of the Staggers Act and the tendered rate is allegedly below the Section 202 market dominance threshold, the Commission may not reject the rate simply because it is above the level specified in an outstanding prescription order or pre-Act rate agreement." *Burlington Northern Railroad Co. v. ICC,* 679 F.2d 934, 942 (D.C. Cir.1982). The case was remanded to the Commission, and BN thereafter submitted Supplement 8, which again proposed a rate of $10.95 for the coal transportation at issue. In addition, this supplement provided that the proposed rate was to be effective as of November 1, 1981, the date Supplement 4 would have taken effect absent the Commission's prior rejection.

In a decision dated December 9, 1982, the ICC approved Supplement 8 and authorized the retroactive application of the $10.95 rate. The Commission reasoned that because its legal error alone had prevented the railroad from collecting the higher rate since November 1, 1981, it was compelled to use its equitable powers "to make BN whole." The agency further ruled, however, that IPL would not be required to immediately repay the back amount due; rather, the parties were directed to apprise the Commission of the amount owed by the utility under Supplement 8 and suggest a reasonable payment schedule, which would thereafter be determined by the agency.[2] This order is now before us on IPL's petition for review.

II

In contesting the Commission's decision, IPL initially challenges the agency's authority to allow retroactive application of the previously rejected rate. Specifically, the utility urges that the ICC's action contravenes both the Interstate Commerce Act and the "filed rate doctrine" and that the

---

1. The agency's prescription order was entered after reconsideration by the ICC. A more detailed description of this aspect of the parties' dispute is set forth in our prior opinion. *Iowa Power & Light Co. v. Burlington N., Inc.,* 647 F.2d at 801–02.

2. In a subsequent order dated June 7, 1983, the ICC determined the amount of principal and rate of interest to be paid by IPL, and directed the utility to establish a payment schedule that, within a specified time-frame, would best fit its needs. The propriety of this order is not now before us.

Commission does not possess the general equitable powers necessary to permit the action taken.

The framework for our review of the Commission's decision is supplied by the Administrative Procedure Act. Pursuant to that statute, agency action may be set aside if found to be, *inter alia*, "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). To the extent necessary, all relevant questions of law, including the interpretation of statutory provisions, are to be resolved by the reviewing court. 5 U.S.C. § 706. In addition, we observe that the interpretation "of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong...." *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969).

## A

■ The focus of IPL's primary contention concerning the Commission's authority to allow retroactive implementation of the previously rejected rate is 49 U.S.C. § 10761(a), which provides in pertinent part:

> Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.

The utility argues that the Commission's action in the present case contravenes both this provision and the "filed rate doctrine," and that it therefore must be rescinded. We cannot agree.

Although the initial sentence of section 10761(a) seemingly supports the contention advanced by IPL, we believe a reading of the provision as a whole demonstrates that it was not designed to prevent action such as that taken by the Commission in this case. The final sentence of the provision indicates that through this section Congress primarily intended to prevent carriers from discriminating among shippers, *see Lowden v. Simonds-Shields-Lonsdale Grain Co.,* 306 U.S. 516, 520–21, 59 S.Ct. 612, 614, 83 L.Ed. 953 (1939) (predecessor of section 10761(a) "forbids [a] carrier from giving a voluntary rebate in any shape or form"); *Louisville & Nashville Railroad Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915) (prohibition against deviation from carrier's filed rate "embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination"), and it is clear that the Commission's action in the present circumstances does not conflict with that underlying purpose. IPL is admittedly the only shipper involved with BN in the disputed transaction, and clearly there is no danger of rate discrimination as a result of the ICC's order. Applying section 10761(a) to bar the action taken by the Commission in this case would do nothing to advance the major purpose upon which that provision is premised—the prevention of rate discrimination among shippers by a carrier. *Cf. Johnson Machine Works, Inc. v. Chicago, Burlington & Quincy Railroad Co.,* 297 F.2d 793, 798 (8th Cir.1962) (no opportunity for discrimination apparent in misrouting situation). In these circumstances, we cannot agree that the Commission's correction of its prior error through the retroactive application of the previously rejected tariff conflicts with section 10761(a) and must therefore be overturned.

Moreover, the Commission's order does not conflict with the general mandate of the Revised Interstate Commerce Act. Nothing in the Act expressly prohibits the ICC from allowing the retroactive application of a tariff in the limited circumstances of this case; more significantly, the challenged action is consistent with the role

contemplated for the ICC under the Act. Several statutory provisions authorize the Commission, in certain circumstances, to alter action it has previously taken. *See* 49 U.S.C. §§ 10324(b), 10327(g)(1). Further, under section 10707(d)(2), a carrier may receive reparations for underpayments which result from the agency's suspension of a rate later determined to be reasonable. The Commission's action in the present case, in terms of cause and effect, is comparable to an order requiring the payment of reparations under section 10707(d)(2). Essentially, both are designed to rectify inequities created by prior Commission action, and the means of correcting the prior error in each situation involves payment by shippers of the rate which should have been allowed under the tariff as originally requested. The above-mentioned statutory provisions, although not expressly authorizing the action taken by the ICC in this case, clearly indicate that it is not inconsistent with the Commission's specific authority under the Act.

For similar reasons, we are not persuaded that the "filed rate doctrine" bars the action taken by the ICC in this case. This doctrine, "which forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory agency," *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981), has as its source several Supreme Court decisions interpreting the Interstate Commerce Act and other regulatory statutes. *See, e.g., Lowden,* 306 U.S. at 520–21, 59 S.Ct. at 614; *see also T.I.M.E. Inc. v. United States,* 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959); *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951). Two considerations, "preservation of the agency's primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant," serve as its primary predicates. *Arkansas Louisiana Gas,* 453 U.S. at 577–78, 101 S.Ct. at 2930 (*quoting City of Cleveland v. FPC,* 525 F.2d 845, 854 (D.C.Cir.1976)).

The Commission's action in the present case is fully consistent with each of these underlying considerations.

Retroactive application of the previously rejected rate does not undermine the ICC's primary jurisdiction in the matter of rates; the Commission's action does not constitute abandonment of its supervisory role over the reasonableness of the rate charged by BN. Indeed, the agency has subsequently determined that the rate in question falls within its jurisdiction, *Retroactive Rate on Coal, Belle Ayr and Eagle Junction, Wyoming to Council Bluffs, Iowa,* Suspension Case No. 70992 (ICC Feb. 9, 1983), and although it declined to investigate the tariff at that stage, the Commission may still render a final determination concerning the rate's reasonableness upon the filing of a complaint by IPL. *See* 49 U.S.C. § 11701. Nor is there any indication that by permitting the previously rejected tariff to take effect retroactively, the ICC has in any way enabled BN to charge a rate unknown to the agency. Thus, it is apparent that the challenged action is entirely consistent with the considerations underlying the "filed rate doctrine." The mechanical application of the doctrine urged by IPL would not serve to promote those considerations in the present case, and we therefore cannot agree that the Commission's remedial measure must be disallowed. *Cf. Maine Public Service Co. v. FPC,* 579 F.2d 659, 666–67 (1st Cir.1978) (where its underlying considerations were not implicated, "filed rate doctrine" did not require disallowance of surcharge by FPC).

We are convinced that the remedial action taken by the ICC is consistent with both the Interstate Commerce Act and the "filed rate doctrine." Consequently, we conclude that neither requires that the Commission's decision be overturned.

**B**

In a related argument, IPL suggests that the Commission lacks the equitable authority to correct its prior error in this case. Essentially, the utility urges that the

ICC cannot utilize equitable or inherent agency authority where, as is allegedly the situation here, the exercise of that authority conflicts with the agency's enabling legislation. We reject this contention.

The Supreme Court has recognized in analogous circumstances that "[a]n agency, like a court, can undo what is wrongfully done by virtue of its order." *United Gas Improvement Co. v. Callery Properties, Inc.,* 382 U.S. 223, 229, 86 S.Ct. 360, 364, 15 L.Ed.2d 284 (1965). At issue in *Callery Properties* was a Federal Power Commission order which required gas producers to refund to their customers the difference between amounts previously collected under judicially invalidated certificate orders and a price subsequently established by the Commission. The Court concluded that the agency had the authority to issue the refund order despite the fact that it had "no power to make reparation orders, ... its power to fix rates ... being prospective only...." *Id.* The action taken by the ICC in the present case is comparable to that upheld in *Callery Properties*—the Commission has acted to undo what was wrongfully done by virtue of its prior order rejecting the increased rate requested by BN. Similar agency corrective action has been sanctioned in other contexts. *See, e.g., Tennessee Valley Municipal Gas Association v. FPC,* 470 F.2d 446 (D.C.Cir.1972).

We cannot agree that the Commission was without authority to allow the erroneously rejected tariff to take effect retroactively as a means of correcting its prior error, we are not persuaded that the ICC has acted in a fashion "repugnant" to its enabling legislation, and, as indicated, the Commission's action is fatally inconsistent with neither the provisions of the Interstate Commerce Act nor the "filed rate doctrine." [3]

In short, we are satisfied that the ICC does not lack the authority to correct its prior error in this case by allowing the rejected tariff to take effect retroactively, and that the exercise of its authority here is consistent with applicable legislative provisions.

### III

IPL's assault upon the Commission's order also proceeds along a second front. Even assuming the ICC has the authority to allow the rejected tariff to take effect retroactively, the utility argues, its action here was arbitrary and capricious and must be set aside.

The Administrative Procedure Act authorizes a reviewing court to overturn agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In evaluating administrative action under this section

the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (citations omitted); *see generally* 5 B. Mezines, J. Stein & J. Gruff, *Administrative Law* Ch. 51 (1983).

Our review convinces us that the Commission's action was not arbitrary and capricious. The gravamen of IPL's contention in this regard is that the agency failed to weigh the equities in the utility's favor, and instead based its decision solely on the hardship incurred by BN. The record belies this assertion. By allowing IPL to repay the back amount due under Supplement 8 over a payment schedule to be subsequently

---

**3.** In a recent letter counsel for IPL has cited as supporting IPL's position a decision of the Commission served June 28, 1983 in its Docket Ex Parte No. 394 (Sub-No. 1), *Cost Ratio for Recyclables—1983 Determination,* in which the Commission states: "[S]hippers may receive refunds or reparations for overpayment *but carriers can never be made whole for underpayments."* (Emphasis added.) That statement, however, was in different context and is not persuasive here.

determined, rather than in a lump sum, the Commission clearly acted in consideration of the utility's alleged repayment difficulties. In addition, the agency's decision does not preclude IPL from pursuing other avenues of relief. The utility is free to initiate an administrative challenge to the reasonableness of the $10.95 rate, *see* 49 U.S.C. § 11701, and its breach of contract action, through which the damages allegedly incurred as a result of BN's implementation of a rate higher than that delineated in the parties' "letter of understanding" could conceivably be recouped, remains pending in federal district court. In these circumstances, we cannot say that the equitable balance struck by the Commission, and the remedial action taken to effectuate that balance, were arbitrary and capricious.[4]

### IV

In sum, we conclude that the ICC acted within its authority in allowing the incorrectly rejected tariff to take effect retroactively, and that its action was not arbitrary and capricious. Accordingly, the petition for judicial review is denied.

---

4. In July of 1982, when BN initially submitted Supplement 8, the Commission's Tariff Section rejected the proposed tariff for failure to comply with the notice requirements of the Interstate Commerce Act and the ICC's tariff rules. BN appealed this decision to the full Commission, and the agency on December 9, 1982 issued its order allowing the tariff to be implemented retroactively. In addition to challenging the validity of this order, IPL also contends the Commission acted arbitrarily insofar as it permitted the tariff to cover the period between July and December, 1982. The inapplicability of the higher rate in this interim, the utility argues, is the result of BN's failure to simply refile Supplement 8 with the requisite notice in July. Consequently, the Commission, which ultimately upheld the determination that Supplement 8 had been filed without proper notice, should have declined to include this period within the time-frame covered by the tariff. We find this argument to be without merit. BN acted within its rights in appealing to the full Commission and securing a determination as to the propriety of the tariff's proposed retroactivity; it cannot be held responsible for the length of time involved in the agency's decision-making process. Given these circumstances, we cannot say the Commission acted arbitrarily in allowing the tariff to be effective over the July 1982—December 1982 period.