**PETRO STAR INC., Petitioner**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Tesoro Alaska Company, et al., Intervenors.**

Nos. 06–1166, 06–1176, 06–1177, 06–1183, 06–1187, 06–1210, 06–1271, 06–1280.

United States Court of Appeals, District of Columbia Circuit.

March 6, 2008.

Rehearing En Banc Denied May 20, 2008.

Before: SENTELLE, Chief Judge, and RANDOLPH and TATEL, Circuit Judges.

### *JUDGMENT*

This case was considered on the record from the Federal Energy Regulatory Commission and on the briefs and arguments of the parties. It is

ORDERED AND ADJUDGED that the petitions are denied. This case is the fourth in a series relating to FERC's regulation of the Trans Alaska Pipeline System (TAPS). *See OXY USA, Inc. v. FERC,* 64 F.3d 679 (D.C.Cir.1995); *Exxon Co. v.* *FERC,* 182 F.3d 30 (D.C.Cir.1999); *Tesoro Alaska Petroleum Co. v. FERC,* 234 F.3d 1286 (D.C.Cir.2000). Numerous petitioners raise challenges to FERC's decision in this proceeding, but all lack merit.

First, BP and other petitioners argue that the value FERC assigned to resid—the component of oil that remains when all others have been boiled off—is arbitrary and capricious. Specifically, the petitioners allege that FERC erred by approving a formula for estimating resid's refining costs without ever totaling up what cost the formula would lead to or ensuring that it was just and reasonable. This objection fails because "the Commission 'need not confine rates to specific, absolute numbers but may approve a tariff containing a rate formula' or a rate rule.' " *Public Utilities Comm'n of State of California v. FERC,* 254 F.3d 250, 254 (D.C.Cir.2001) (quoting *Transwestern Pipeline Co. v. FERC,* 897 F.2d 570, 578 (D.C.Cir.1990)). Moreover, the Commission specifically found that the formula it adopted was just and reasonable "and [that] the resulting resid value is just and reasonable." *Trans Alaska Pipeline System,* 113 F.E.R.C. ¶ 61,062 at 61,182 (2005). Petitioners also claim that the resid value FERC settled on was outside the "zone of reasonableness" because the estimate of refining costs FERC used was higher than anything supported by the record. But the refining costs FERC estimated were well within the range demonstrated in exhibit PAI–10. Petitioners argue that PAI–10 was unreliable, but their expert prepared PAI–10 and relied on it heavily, and a party cannot "argue that the Commission was wrong to rely on evidence [the party] put before it." *Consolidated Rail Corp. v. ICC,* 29 F.3d 706, 714 (D.C.Cir.1994).

Continuing their assault on FERC's resid valuation, petitioners say FERC double

counted certain refining costs by adding the cost of some refining machinery to an estimate that already included it. As FERC explained, however, the cost estimate to which it added these costs specifically excluded the items FERC added, so there was no double counting. Also, while petitioners object to FERC's estimate of refineries' indirect costs, their expert witness was the one who proposed the formula FERC used, and substantial evidence supports the total indirect costs FERC predicted. Similarly without merit is petitioners' objection that FERC should have ignored the shipping and handling costs of the resid byproduct coke when estimating resid's value. Although FERC ignored the shipping and handling costs of most oil components, it explained that the costs of shipping and handling coke are dramatically higher relative to its value than are those of any other oil product, making it perfectly reasonable for FERC to treat coke differently. As to petitioners' argument that FERC should have ignored two tests estimating the resid content of Alaskan oil because the test results were slightly outside the range of other tests, the difference was minimal, petitioners pointed to no flaws in the testing methodology, and this is exactly the type of expert judgment about which we defer to FERC. *See Ass'n of Oil Pipe Lines v. FERC*, 83 F.3d 1424, 1445 (D.C.Cir.1996) ("Because the Commission's analysis required a high level of technical expertise, the court owes deference to the Commission's informed and rationally exercised discretion."). Petitioners' final argument about resid valuation—that FERC should have applied its new resid valuation retroactively only to 2004 because before that no one would have processed resid in the way FERC suggested—is belied by substantial record evidence indicating that many refineries operated before 2004 as FERC proposed.

Second, ExxonMobil and ConocoPhillips argue that section 4412(b)(1) of the Safe, Accountable, Flexible, Efficient Transportation Equity Act (SAFETEA), Pub.L. No. 109–59, 119 Stat. 1144, 1778 (2005), which prohibited FERC from making its resid price valuation retroactive to any period before February 1, 2000, is unconstitutional. Specifically, they claim section 4412(b)(1) not only violates the Constitution's due process and equal protection guarantees, but also violates separation of powers by interfering with a pending adjudication, i.e., it reversed the administrative law judge's decision in this matter to make FERC's resid price retroactive to 1993. As to the first argument, because section 4412(b)(1) neither infringes a fundamental right nor draws a suspect classification, it "must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for" it. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). This standard is plainly satisfied, for Congress could easily have concluded that limiting the retroactivity of refunds would help provide certainty to parties affected by FERC's decision. As to petitioners' separation of powers argument, any claim that Congress's decision here unconstitutionally exercised judicial power is foreclosed by our decision in *National Coalition to Save Our Mall v. Norton*, 269 F.3d 1092 (D.C.Cir.2001).

Third, ExxonMobil and ConocoPhillips challenge FERC's decision to calculate the resid cut's retroactive value by using the new West Coast rates for naphtha and VGO. Because the filed rate doctrine bars FERC from retroactively applying the new West Coast rates to the "straight-run" naphtha and VGO cuts, the petitioners argue that the filed rate doctrine also bars FERC from retroactively applying the new West Coast rates to the

"coker" naphtha and VGO derived from coking resid and used to calculate resid's value. But no application of the filed rate doctrine prevents the retroactive use of straight-run naphtha and VGO rates as part of the formula for valuing the coker naphtha and VGO components of an entirely different product, resid. Alternatively, the petitioners argue that FERC's decision was arbitrary and capricious because the Quality Bank methodology is "designed to use the *same* price for [n]aphtha and VGO" for straight-run naphtha and VGO and coker naphtha and VGO. Pet'rs' Opening Br. 39–40. FERC, however, reasonably interpreted the parties' October 3, 2002 stipulation as permitting retroactive application for purposes of calculating resid's value because the parties agreed that once disputes "as to the Quality Bank values to be used for certain of the cuts ... are resolved, the resulting values should be used for valuing [r]esid." Joint Stip. of the Parties 2 n. 2 (Oct. 3, 2002); *see also Williams Natural Gas Co. v. FERC*, 3 F.3d 1544, 1550 (D.C.Cir.1993) (deferring to FERC's reasonable interpretation of stipulations).

■ Fourth, Petro Star and Williams challenge FERC's 2003 decision to value Gulf Coast naphtha by averaging two different prices of naphtha published by the Platts Oilgram Price Report. After the report switched from publishing one naphtha price to publishing two different prices depending on the size of the transaction, FERC concluded that the product prices had been "radically altered" and decided to average the two prices. *Trans Alaska Pipeline System*, 104 F.E.R.C. ¶ 61,201 at 61,705–06 (2003). Petitioners have failed to show that this decision was arbitrary and capricious or otherwise unsupported by substantial evidence. Alternatively, petitioners argue that because the parties stipulated that changes in naphtha and

VGO rates should have the same effective date, VGO's new West Coast rate should apply retroactively to 2003, when the averaged naphtha prices went into effect. The filed rate doctrine, however, bars retroactive application of VGO's new rates. *See, e.g., OXY*, 64 F.3d at 699 ("The [filed rate] doctrine's corollary, applicable here, is the rule that agencies may not alter rates retroactively.").

■ Fifth, Flint Hills and Petro Star argue that under *Tennessee Valley Municipal Gas Ass'n v. FPC*, 470 F.2d 446 (D.C.Cir.1972), FERC should apply the new West Coast naphtha and VGO rates retroactively for 922 days to account for FERC's improper delay in considering an earlier complaint challenging those rates. In the proceeding before FERC in this case, however, Petro Star opposed such relief under *Tennessee Valley*. In addition, when FERC was considering the earlier complaint, Williams, which at the time owned Flint Hills's Alaskan refinery, urged FERC to dismiss the complaint. No unfairness exists when the complaining parties (or their predecessors) invited the error because FERC's legal error did not "unfairly prolong[ ] th[e] pendency" of those rate determinations. *Tenn. Valley*, 470 F.2d at 453. Although FERC failed to distinguish *Tennessee Valley* on this ground, the *Chenery* doctrine, *SEC v. Chenery*, 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943), is inapplicable because interpretation of our precedent is not a matter entrusted to the agency's judgment. *Id.* at 88, 63 S.Ct. 454. Alternatively, petitioners argue that because the parties stipulated in 2002 to new West Coast naphtha and VGO rates, those rates should apply retroactively from the date of the stipulation. But the stipulation expressly disavowed agreement on an effective date, and thus failed to put the parties on notice that any new rates would apply

retroactively. *See, e.g., OXY*, 64 F.3d at 699 ("[The filed rate doctrine] does not extend to cases in which customers are on adequate notice that resolution of some specific issue may cause a later adjustment to the rate being collected at the time of service." (citation omitted)).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing en banc. *See* FED. R.APP. P. 41(b); D.C.CIR. R. 41.